MARGARET J. MITCHELL *vs.* CHARLES S. MITCHELL and another.

February 27, 1890.

**Will—Undue Influence—Evidence.**—In determining the question of undue influence upon the mind of a testator in disposing of his property by will, the frame of the will and the nature of the testamentary dispositions are in themselves important evidence.

**Same—What Constitutes Undue Influence — Testator's Prejudices.**— A testator may be affected by his prejudices and predilections arising from his associations and external influences, but, if he is of sufficient testamentary capacity, he may nevertheless dispose of his property as he pleases by will, if it be his own voluntary act. To constitute undue influence, the testator must be so controlled by persuasion, pressure, or fraudulent contrivance that he is not left to act intelligently and voluntarily, but becomes subject to the will or purposes of others. Evidence *held* sufficient to support the findings of the trial court.

Appeal by Margaret J. Mitchell, the contestant, from a judgment of the district court for Stearns county, *Baxter* and *Searle,* JJ., presiding, refusing a new trial, after a decision sustaining the will of her late husband, James S. Mitchell.

*D. W. Bruckart, D. T. Calhoun,* and *A. C. Robertson,* for appellant.

*O: W. Baldwin* and *Reynolds & Stewart*, for respondents.

VANDERBURGH, J. The will of James S. Mitchell, deceased, was contested in the probate court by his wife, Margaret Mitchell, on the grounds that it was not lawfully executed; that the testator was not of sound and disposing mind and memory; and that "he signed the same under duress, menace, undue influence, and fraud." From the decree of the probate court establishing the will and admitting it to probate, the contestant appealed to the district court of Stearns county, where the case was duly tried by the court, no formal issues having been specially framed for a jury in pursuance of the statute. Upon the trial of the case in the district court, the issues were determined in favor of the proponents, and the contestant appeals. We have carefully examined the record in the case, and are of the opinion that the findings of the court are abundantly supported by the evidence, and that there is no ground for a reversal of the order denying a new trial. The findings of fact are sufficient to cover all the points upon which the will was contested, unless a more specific finding was necessary upon the issue of fraud; but there was no evidence tending to prove fraud, unless as appearing in the evidence relied on to prove undue influence. So that the findings as made are sufficient, for the purposes of this appeal, to protect the rights of the contestant; and all the evidence in the case tending to show any attempt on the part of relatives or others to control the testamentary disposition of his property by the decedent may properly be considered upon the issue of undue influence.

The deceased was an invalid, and the subject of medical treatment for a considerable time before his death, and was nervous and irritable in consequence of his sickness; but the evidence leaves no reasonable doubt of his sanity or testamentary capacity when he executed his will. Indeed, the full, intelligent, and apparently candid statements appearing in the testimony of the witnesses to the will, and the attorney who drafted it, as well as of the physicians who attended him, is very persuasive upon the question of the alleged undue influence. His brother, who was with him during his sickness, testifies that before the will was made he made minutes, at the request of the testator, of the proposed disposition of his estate, and

from these the attorney prepared a preliminary or skeleton draft of a will, and it was afterwards read over to the testator, and discussed between them; and it appears from the testimony that the plan of the will was then so much changed, at his dictation, that it became necessary to prepare a new one, which was thereupon done, to conform to the testator's ideas and wishes, and which was read over to him three or four times, and each clause separately and carefully explained and considered. It is sufficiently evident from the record that he was a person of intelligence, independence of mind, and decision of character, and that these characteristics were retained at the time the will was made; and, conceding that the property disposed of was his, the will, on its face, would not be deemed so unfair to contestant as to excite suspicion of undue influence.

The contestant claims, however, upon the evidence, that the estate held by him was largely the result of her own earnings and sagacity, and was in part received from her after the marriage. It is also insisted that his mind had become prejudiced against her through the interference and active influence of his relatives. The evidence shows mutual dislike between her and them, and that there was distrust on his part towards her in his last sickness; but how far his disposition towards her may have arisen from causes or differences arising between themselves, or how much he may have been affected by the prejudices of his relatives, (if at all,) does not clearly appear. All these matters, including the matter of the division and disposition of his property by him, we may assume were duly considered by the trial court. There is evidence in the case indicating anxiety on the part of some of his relatives to share in his property, but it is not clear that he was influenced by this. For example, his brother testifies that while he was absent, receiving medical treatment, his mother wrote to him expressing her wish that he would make his will, and leave his homestead to her. On being informed of this, however, he remarked that he had always intended to give her that property. A person will be influenced in the formation of his attachments and prejudices, by his associations, relationships, benefits or injuries received, etc. This is natural, and he may, in the exercise of his choice, dispose of his property according to his predilections thus

formed. But this alone is not enough to warrant an inference of such constraint or control over his will as to amount to undue influence, though it is a circumstance proper to be considered. *Horn* v. *Pullman*, 72 N. Y. 269, 277.

To constitute undue influence, the mind of the testator must be so controlled or affected by persuasion or pressure, artful or fraudulent contrivances, or by the insidious influence of persons in close confidential relations with him, that he is not left to act intelligently, understandingly, and voluntarily, but becomes subject to the will or purposes of another. *Marx* v. *McGlynn*, 88 N. Y. 357, 370. It is a testator's privilege to make such disposition of his property as he pleases; and, if the will is his,—that is, if it is the voluntary act of a competent testator,—it must stand, if properly executed in form. And when the proponents make a *prima facie* case of a valid will, as in this instance, the burden will rest necessarily upon the contestant to overthrow such case, and establish the undue influence complained of. We may well doubt whether, in any aspect of the case, the evidence of the contestant can be considered sufficient to support a finding in her favor on the question under consideration; but, as this case was determined after a full hearing on the merits, it is clear to us that the evidence on this issue was not sufficiently strong or conclusive to warrant us in setting aside the decision of the trial court.

Order affirmed.