## B. F. HOWARD v. CHANDLER FARR and Another.[1]

June 30, 1911.

Nos. 17,054—(182).

**Conveyance — undue influence — burden of proof.**

In an action to recover the value of land conveyed by a sister to her brothers on the ground that the deed was procured through undue influence, the burden of proof is upon plaintiff.

**Same — evidence.**

Evidence considered, and *held* insufficient to make out a prima facie case sufficient to justify the submission to the jury of the question whether the deed was procured by undue influence.

**Action by administrator — limitation of action.**

In an action by an administrator of the estate of a deceased person to recover the value of land conveyed by such person, on the ground that the deed was procured by fraud or undue influence, where the facts alleged to

[1] Reported in 131 N. W. 1071.

constitute the fraud or undue influence are discovered by the heirs of the grantor, and the administrator is appointed and the suit commenced more than seven years after such discovery, the action is barred by the statute of limitations.

**Cross-examination.**

When a witness on cross-examination is asked to disclose particular facts in his past life of a character that tend to disgrace him, but which are wholly irrelevant to any issue and have no fair tendency to throw light on the credibility of the witness, an objection should be sustained.

Action by the administrator of the estate of Cordelia Ingalls, deceased, against defendant Farr and Jennie Grant, in the district court for Chisago county to recover $7,000, for money and property belonging to the estate of said decedent which the deceased had deeded to defendants. At the beginning of the trial defendants' motion that the court direct plaintiff to elect whether he intended to prosecute the case as an action for damages for fraud and deceit, or as an action for an accounting for the proceeds of the sale of land, or as an action for the recovery of consideration for land unpaid, was denied. The case was tried before Stolberg, J., and a jury which returned a verdict in favor of plaintiff for $6,731.13. From an order denying defendants' motion for judgment notwithstanding the verdict or for a new trial, they appealed. Reversed and judgment for defendants ordered.

*Lind, Ueland & Jerome,* for appellants.

*Miller & Clapp* and *Alfred P. Stolberg,* for respondent.

BUNN, J.

This action was brought in October, 1908, by plaintiff, as special administrator of the estate of Cordelia Ingalls, deceased, to recover the value of two hundred acres of land in Chisago county, deeded May 12, 1899, by Cordelia Ingalls to defendant Chandler Farr and Henry Farr, since deceased. The complaint charged that Cordelia Ingalls was of unsound mind when she made the deed, that the deed was without consideration, and was procured from her by the fraud

and undue influence of defendants. The answer admitted the conveyance, but claimed it was for a valuable consideration, denied the charges of the complaint, and pleaded the statute of limitations. The issues were tried to a jury, and a verdict was rendered in plaintiff's favor and against both defendants for the value of the land, with interest, amounting to $6,731.13. Defendants moved for judgment notwithstanding the verdict or for a new trial, and appealed from the order denying such motion.

1. The first and chief question presented is as to the sufficiency of the evidence to sustain the decision of the jury that the deed was obtained by defendants through fraud or undue influence. The material facts as shown by the evidence are as follows:

Cordelia Ingalls was the widow of Ephraim Ingalls, who died in 1894. Their only child was a daughter, Anna, who lived with her parents on their farm in Sunrise township, Chisago county, and afterwards in the village of North Branch in a house which had come to Ingalls for life by the will of his mother; the reversion being in the daughter. Anna married B. F. Howard, plaintiff, in 1879, and in 1884 they moved to Duluth, where they have since lived. After the Howards moved to Duluth, Mrs. Ingalls visited her daughter there at times, but for many years prior to the transaction in question had not visited her. Mrs. Ingalls had a younger sister, the defendant Jennie Grant, who with her husband, in February, 1898, went to live with Mrs. Ingalls, who was then about sixty-two years of age and in poor health. Defendant Chandler Farr and Henry Farr were brothers of Mrs. Ingalls and Mrs. Grant. They were bachelors, and lived together with their aged mother and a housekeeper on their farm on Sunrise Prairie, some eight miles east from North Branch. Another brother was Egbert Farr, who lived about four miles east of the village. The relations between Mrs. Ingalls and her sister and brothers were always very friendly. Egbert managed her business affairs. She frequently visited Chandler and Henry at the farm.

In October or November, 1898, she went on one of these visits. Mr. Grant, her sister's husband, accompanied her. After arriving at her brothers' home, it turned cold and stormy, and she decided to remain through the winter. She was weak and frail physically,

though mentally strong as ever. She assisted some in the housework, received visits from neighbors, and was contented and happy. In March she was very ill for a week or two, and her sister, Mrs. Grant, and daughter, Mrs. Howard, came to nurse her. Mrs. Howard remained three days, returning when her mother began to get better.

In January Mrs. Ingalls sold a forty-acre tract to one Lindblom. She sent for C. A. Holt, formerly probate judge of Chisago county, who prepared the deed and took her acknowledgment. The consideration was $580, and was paid over to her. In February she again sent for Judge Holt to prepare a deed of another forty acres to her brother Henry. This deed was executed and delivered to Henry; the consideration being work done for her by Henry since her husband's death. May 12, 1899, she again sent for Holt, and also for an old friend of hers, Julius Johnson, a neighboring farmer. She then executed and delivered the deed to Chandler and Henry involved in this case. The consideration named in this deed was $4,000. It is admitted that but $10 of this was paid. The only evidence of what the transaction really was is to the effect that Mrs. Ingalls had decided to live with her brothers the rest of her life. She wanted them to have the land; the agreement being that they would pay the $4,000 as and when she demanded it. Mrs. Ingalls continued to live with her brothers until her death in June, 1899. Mrs. Howard was present at the funeral. Defendant Farr told her then that her mother had conveyed to his brother and himself all the land. In 1902 Chandler and Henry Farr sold forty acres of the land for $770. In March, 1905, Henry deeded to Chandler an undivided half of the remaining one hundred sixty acres. Chandler conveyed an undivided half to Henry in July, 1905, and Henry reconveyed to Chandler in June, 1906. Shortly afterwards Chandler deeded this one hundred sixty acres to his sister, the defendant Jennie Grant, who in June, 1908, sold the land to one Peterson.

There is little, if any, evidence to substantiate the charge of fraud or undue influence, outside of the facts above recited. It is admitted that Mrs. Ingalls' mind was perfectly sound. It is entirely clear that she went to visit her brothers of her own accord, as she had

done many times before, and that she remained there at her own suggestion. The evidence is conclusive that she was happy and contented, and received frequent visits from old friends and neighbors. The evidence lacks even a suggestion of any duress or influence on the part of her brothers to induce her to deed them her property. They were old men, with ample means of their own. Plaintiff seems to lay much stress on the influence that defendant Jennie Grant exercised over her sister. This is based upon the testimony of the witness Jennie Elmgren, who was a girl brought up by Mrs. Ingalls, and dismissed when the Grants went to live with her. The witness' opinion that Mrs. Grant had more influence over Mrs. Ingalls than anybody else is worthless to prove undue influence. Mrs. Grant was not present at her brothers' house during her sister's stay there, except that she visited her at Christmas, again in January, attended her for some three weeks during her illness in March, and again in her last illness, and we see nothing to connect her with the transaction of the deed, other than Chandler's conveyance of one hundred sixty acres to her six years later. There is certainly nothing strange about this last conveyance. She was Chandler Farr's nearest relative, would be his sole heir at law, and he shortly afterwards went to live with her and her husband in the state of Washington.

Plaintiff urges that the admitted fact that the deed operated to cut off Mrs. Ingalls' natural heir, her daughter, creates a presumption of fraud, or at least is a strong circumstance to indicate fraud. We think that the most that should be said of this result of the deed is that it is a circumstance to be considered and given due weight. It does not make the deed presumptively fraudulent, any more than a will devising the land to her brothers would have been presumptively fraudulent. There is evidence tending to show that Mrs. Ingalls had become somewhat estranged from her daughter; but the evidence wholly fails to substantiate the claim that this feeling was induced by any words or actions of defendants. The daughter had lived at a distance from her mother for many years, and visits between them had been few. She may well have thought that her daughter was sufficiently well provided for by her husband and her

grandmother. In any event, it is clear that Mrs. Ingalls and her sister and brothers had been very close to each other for years, while the daughter lived in another community, with other interests.

The fact that the consideration named in the deed was $4,000, while the evidence shows that but $10 was paid, is relied on as a fact indicating fraud. But we must either believe the evidence that the balance of the $4,000 was to be paid if and when Mrs. Ingalls called for it, or treat such balance as due. There is no evidence of an intent to deceive the grantor by inserting a wrong consideration in the deed, or to deceive others, and it does not appear that it had such an effect.

Counsel for plaintiff rely on the alleged concealment of the transaction by defendants as a badge of fraud. But Chandler Farr admittedly told Mrs. Howard, the only interested person, on the day of Mrs. Ingalls' funeral, that the latter had deeded her real estate to Henry and himself. He did not state the terms of the conveyance, but was not asked to. The deed was recorded the day after it was made. We fail to see any such concealment as would be a badge of fraud.

It is claimed that, because the money received by Mrs. Ingalls from the sale of the forty to Lindblom was not found after her death, some inference arises of fraudulent conduct on the part of defendants. The only evidence of what became of this and other money of Mrs. Ingalls is to the effect that it was paid over to her brother Egbert Farr, who was acting as her man of business, and who died before the action was tried.

It is clear that, unless the burden of proof rested on defendants to show that there was no fraud or undue influence, there was not only insufficient evidence to sustain the verdict; but no case was made to justify the submission of these issues to the jury. Of course, fraud or undue influence may be proved by circumstantial evidence; but there must be evidence of circumstances that would lead reasonable men to the conclusion that there was fraud or undue influence. Mere suspicion is insufficient, and we have searched the record in vain for anything else.

Whether there was a valuable consideration for the deed, or

whether it is treated as a gift, it is valid, unless there was fraud or undue influence. It was from a sister to her brothers. There is nothing in the relations of the parties, or in the fact that the deed operated to cut off the daughter, who was the grantor's heir, to make the deed presumptively fraudulent; and the burden is unquestionably upon the person seeking to set aside the conveyance to establish the charge of fraud or undue influence. Even in the case of a gift from parent to child, or child to parent, while the court will scrutinize carefully the circumstances of the transaction, the presumption is in favor of its validity, and in order to set it aside on the ground of undue influence the court must be satisfied that it was not the voluntary act of the donor; the burden of establishing such fact being upon the party contesting the gift. Rader v. Rader, 108 Minn. 139, 121 N. W. 393; Prescott v. Johnson, 91 Minn. 273, 97 N. W. 891.

A gift from sister to brother, or from brother to sister, is less open to suspicion than a gift from parent to child, or from child to parent, because the natural influence is less, the relation not so intimate. There is no reason for not applying the familiar rule that the party who seeks to set aside a solemn instrument like a deed on the ground of fraud or undue influence, which is a species of fraud, has the burden of proof. In proving undue influence, there must be evidence to satisfy the court that the free agency of the donor or testator was destroyed at the time the instrument was made, so that, in effect, the deed or will does not express the mind and intent of the donor or testator, but is the act of the person exercising the influence. To constitute undue influence, the mind of the donor or testator must be so controlled or affected by persuasion or pressure, artful or fraudulent contrivances, or by the insidious influence of persons in close confidential relations with him, that he is not left to act intelligently, understandingly, and voluntarily, but becomes subject to the will or purposes of another. Mitchell v. Mitchell, 43 Minn. 73, 44 N. W. 885; In re Nelson's Will, 39 Minn. 204, 39 N. W. 143; Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598; In re Hess' Will, 48 Minn. 504, 51 N. W. 614, 31 Am. St. 665.

Tested by these rules, the evidence in the case at bar failed to make out a prima facie case of undue influence or fraud. There was no

evidence to take the case to the jury, and defendants' motion for a directed verdict should have been granted.

2. This action was commenced nearly ten years after the deed was executed, and after Mrs. Ingalls' death. Excluding from the computation of time the two six-months periods as provided by R. L. 1905, § 4085, the executor or administrator had seven years after the discovery of the fraud in which to bring the action. In other words, if the fraud was discovered prior to October 21, 1901, the statute of limitations bars the suit. Mrs. Howard was the real party in interest. If she had knowledge of the facts claimed to constitute the fraud or undue influence prior to October 21, 1901, there being no rights of creditors involved, the action is barred. The burden of proof was with plaintiff to show that the facts constituting the fraud were not discovered until within seven years before the suit was commenced, and also that the failure to discover them sooner was not due to lack of reasonable diligence or to negligence. The means of discovery are equivalent to actual discovery, and a party must be deemed to have discovered fraud when, in the exercise of reasonable diligence, he could and ought to have discovered it. Duxbury v. Boice, 70 Minn. 113, 72 N. W. 838.

Mrs. Howard testified that at her mother's funeral Chandler Farr said to her: "Your mother has deeded everything to us. She has left you the bedding and the organ." Mrs. Howard knew that her mother had a farm and some timber land, and says that she believed, when Farr told her of the deed, that it was without full consideration. She testifies that she was first told that it was believed the brothers had fraudulently obtained the property about a year after her mother died. It appeared that this information was obtained from her uncle Egbert not later than August, 1900. She made no inquiry as to her mother's funeral expenses, and did not know who paid them. She made no further inquiry as to the circumstances of the transaction of the deed. When asked on direct examination why she did not take steps against them, she answered: "Well, as long as they didn't sell off the property, we let things stay as they were; but, when they began selling the property, we thought it was time to

do something." She also stated that she did not find out the value of the property until two years before the suit was brought.

Plaintiff, the husband of Mrs. Howard, who was appointed special administrator of the estate of Mrs. Ingalls, and after the suit was brought appointed administrator, testified that his wife told him, shortly after the funeral of Mrs. Ingalls, that she had conveyed her real estate to the Farrs, but that he did not know the deed was without consideration, or that it was given shortly before Mrs. Ingalls' death, or that she was not in her right health and mind at the time.

We think it is clear that if Mrs. Howard, who was "the aggrieved party," after her mother died, discovered the facts claimed to constitute fraud prior to October, 1901, the action is barred. It is immaterial that B. P. Howard did not discover the fraud until 1908. The seven years after the discovery by his wife had expired before he was appointed administrator. If it is the discovery by the personal representative of the estate that controls, it would be easy for the "aggrieved party" to delay indefinitely the running of the statute by failing to apply for letters of administration. The statute (R. L. 1905, § 4085), clearly contemplates that the time after six months from the death of the party having a cause of action shall be computed in determining the time within which an action must be brought, whether an administrator is appointed during such time or not. And if the cause of action is for fraud the statute begins to run on the discovery of the fraud, either by the deceased in his lifetime or by his heirs after his death. Had this case been brought within a reasonable time after Mrs. Howard was told that the transaction was fraudulent, Henry Farr, Egbert Farr, and the aged mother, all material witnesses, would have been alive, and could probably have thrown light on the transaction.

We hold that it conclusively appears that Anna Howard in August, 1900, had discovered enough of the facts upon which the action is based to make it her duty to institute inquiry, and that she is chargeable with whatever knowledge such inquiry would have brought her. Indeed, it fairly appears that she knew in 1900 all the material facts that were disclosed on the trial. It follows that the action was commenced more than seven years after the discovery of the

fraud by the aggrieved party, and is therefore barred by the statute of limitations.

3. Our conclusions leading to a judgment ending this litigation,. it is unnecessary to consider the rulings on the admission of evidence or the instructions assigned as error. But we wish to indicate our emphatic disapproval of the action of the trial court in overruling objections to the questions asked of the witness Jennie Grant on cross-examination calling for her admission that thirty-one years before the trial she deserted her husband and children, and of the instruction to the jury that this might be considered by them in determining her credibility as a witness. While we do not depart from the well settled rule that it rests largely within the discretion of the trial court to permit questions to be asked of and answered by a witness that are irrelevant to any issue, when the questions or answers tend to disgrace or degrade the witness, such discretion is not absolute and may be abused. When a witness on cross-examination is asked to disclose particular acts in his past life of a character that tend to disgrace him, but which are wholly irrelevant to any issue,. and have no fair tendency to throw light on his credibility as a witness, or the truthfulness of his testimony, an objection should be promptly sustained. It certainly cannot be said that the fact, unexplained, that the witness left her husband and children thirty-one years before the trial, and twenty years before the transaction about. which she testifies occurred, has any legitimate bearing on whether her testimony was worthy of belief, and yet the admission of such testimony and the court's singling it out in its charge, telling the jury in effect that they might consider it in determining the credibility of the witness, had a strong tendency to induce the jury to believe that the witness was unworthy of belief.

We are of the opinion that it is apparent that no new evidence can be discovered that would make a case for the jury, either on the question of undue influence or on the question of the statute of limitations. It is therefore right to end the litigation.

Order reversed, and judgment for defendants ordered.