## CELESTINE THILL AND OTHERS v. GEORGE FREIERMUTH AND OTHERS.[1]

February 4, 1916.

Nos. 19,551—(204).

**Husband a competent witness in action by wife, when.**

1. Since the enactment of Laws 1907, c. 123, § 1 (G. S. 1913, § 6814), giving a wife the right to convey her real estate by her separate deed, the husband, in an action involving real estate not the homestead, to which action his wife is a party, is not prohibited from testifying to a conversation with a deceased person by G. S. 1913, § 8378 (R. L. 1905,

[1] Reported in 156 N. W. 260.

§ 4663), making a person interested in the event of an action incompetent to testify as to such conversation.

**Undue influence — circumstantial evidence.**

2. To constitute undue influence the mind of the grantor must be so influenced that the deed in effect represents the mind and intent of another and not his own. The burden of proof is upon the plaintiffs. Circumstantial evidence is sufficient. A deed from parent to child, though subject to scrutiny, is presumed valid.

**Finding not sustained by evidence.**

3. The evidence is examined and *held* not to sustain a finding that a certain deed was procured by undue influence.

Action in the district court for Dakota county to set aside a conveyance from Columbus Freiermuth to defendant George Freiermuth and to restrain defendant Gress, as executor of the last will and testament of Columbus Freiermuth, deceased, from selling certain notes and mortgage. The case was tried before Johnson, J., who made findings in favor of plaintiffs. From the order denying their motion for judgment notwithstanding the decision or for a new trial, defendants appealed. Reversed.

*W. H. Gillitt* and *T. R. Johnson,* for appellants.
*Otto Kueffner,* for respondents.

DIBELL, C.

Action by certain of the heirs and devisees of Columbus Freiermuth, deceased, against George Freiermuth, a son and one of the devisees of the deceased, and Cliff W. Gress, his executor, to set aside a deed made by the deceased to the defendant Freiermuth. There were findings for the plaintiff. The defendants appeal from an order denying their motion for a new trial.

1. At the trial a witness, the husband of one of the plaintiffs, was permitted to testify to conversations with the deceased. It is urged that this was error. The statute provides that "it shall not be competent for any party to an action, or any person interested in the event thereof, to give evidence therein of or concerning any conversation with, or admission of, a deceased or insane party or person relative to any matter at issue between the parties," etc. G. S. 1913, § 8378 (R. L. 1905, § 4663).

In Madson v. Madson, 69 Minn. 37, 71 N. W. 824, it was held that the wife of a party was a competent witness to a conversation with the deceased relative to the issue, which was the title to real estate, she not being interested in the event of the action within the meaning of the statute. In Lowe v. Lowe, 83 Minn. 206, 86 N. W. 11, it was held that a husband could not testify as to such conversations in an action in which his wife was a party, his interest in the event of the action being such. as to disqualify him. As the statute then was the wife could not convey without her husband joining, and it was held that the husband had an interest in his wife's lands so different from that of a wife in her husband's lands that the prohibitions of the statute were applicable; and Madson v. Madson, supra, was distinguished. As the statute now is a wife may by her separate deed convey her real property, except the homestead. Laws 1907, p. 137, c. 123, § 1 (G. S. 1913, § 6814). The result is that the husband has now no such interest in the event of the action as disqualifies him from testifying, unless the property be the homestead and the rule in the Madson case is applicable and controlling. The trial court did not err in receiving the testimony.

2. In In re Nelson's Will, 39 Minn. 204, 39 N. W. 143, approval was given to the definition of undue influence quoted in Conley v. Nailor, 118 U. S. 127, 6 Sup. Ct. 1001, 30 L. ed. 112, from a Pennsylvania case: "That is undue influence which amounts to constraint, which substitutes the will of another for that of the testator. It may be either through threats or fraud, but, however exercised, it must, in order to avoid a will, destroy the free agency of the testator at the time when the instrument is made." In Howard v. Farr, 115 Minn. 86, 131 N. W. 1071, this language is used: "In proving undue influence, there must be evidence to satisfy the court that the free agency of the donor or testator was destroyed at the time the instrument was made, so that, in effect, the deed or will does not express the mind and intent of the donor or testator, but is the act of the person exercising the influence. To constitute undue influence, the mind of the donor or testator must be so controlled or affected by persuasion or pressure, artful or fraudulent contrivances, or by the insidious influence of persons in close confidential relations with him, that he is not left to act intelligently, understandingly, and voluntarily, but becomes subject to the will or purposes

of another." This conception is expressed in varying language in different cases. Mitchell v. Mitchell, 43 Minn. 73, 44 N. W. 885; Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598; In re Hess' Will, 48 Minn. 504, 51 N. W. 614, 31 Am. St. 665; Tyner v. Varien, 97 Minn. 181, 106 N. W. 898; Buck v. Buck, 122 Minn. 463, 142 N. W. 729. The burden of proving undue influence is upon the plaintiffs. Rader v. Rader, 108 Minn. 139, 121 N. W. 393; Mitchell v. Mitchell, 43 Minn. 73, 44 N. W. 885; In re Hess' Will, 48 Minn. 504, 51 N. W. 614, 31 Am. Rep. 665; Tyner v. Varien, 97 Minn. 181, 106 N. W. 898. It may be proved by circumstantial evidence—usually is so proved. In re Storer's Will, 28 Minn. 9, 8 N. W. 827; Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502; Naeseth v. Hommedal, 109 Minn. 153, 123 N. W. 287; Buck v. Buck, 122 Minn. 463, 142 N. W. 729. "But the circumstances relied on to show it must be such as, taken all together, point unmistakably to the fact that the mind of the testator was subjected to that of some other person, so that the will is that of the latter, and not of the former; mere ground of conjecture or guess is not enough." In re Nelson's Will, 39 Minn. 204, 39 N. W. 143. A transaction resulting in a deed from a parent to a child will be scrutinized carefully, but the presumption is in favor of the validity of the deed. Rader v. Rader, 108 Minn. 139, 121 N. W. 393; Prescott v. Johnson, 91 Minn. 273, 97 N. W. 891; Gustafson v. Gustafson, 92 Minn. 139, 99 N. W. 631; and see Howard v. Farr, 115 Minn. 86, 131 N. W. 1071. It is not enough that the one benefited had an opportunity to exert undue influence and the motive for exercising it. In re Nelson's Will, 39 Minn. 204, 39 N. W. 143; In re Hess' Will, 48 Minn. 504. 51 N. W. 614, 31 Am. St. 665; Little v. Little, 83 Minn. 324, 86 N. W. 408. There must be undue influence exercised in fact and it must be effective.

3. Upon a consideration of the evidence, applying the principles stated, we reach the conclusion that a finding of undue influence is not sustained.

Columbus Freiermuth came to Minnesota in 1866 or 1867 and settled in Dakota county. He bought a farm of 104 acres when land was cheap. He added to it until it contained nearly 400 acres. He and his wife were thrifty and accumulated in addition to the farm something like $20,000 or $25,000, something over one-half being treated as the savings of the husband and the rest as the savings of the wife. Appar-

ently the mother's portion went to the children; and there was some sort
of distribution of some of the father's portion, though the precise dis-
position of it is not shown. The defendant was the oldest son and was
57 years of age at the time of the trial. He stayed on the farm. The
other children married and left home early in life, some coming to St.
Paul, and others going elsewhere but to places in the general vicinity
of the old home. The defendant was the only farmer. The father re-
tired from active work some 24 or 25 years prior to his death and the
defendant rented the farm during that period. Prior to that he had
rented a portion of it. For two years he had rented a farm nearby. The
father and mother lived in a house on the farm but apart from their son.
The mother died in February, 1911, and the father then went to the
home of the defendant where he lived until his death. In 1908 he made
a will, to which his wife assented, devising, after certain specific bequests,
the residue of his property to his children in equal shares. On Novem-
ber 9, 1911, he executed to the defendant the deed now in question. At
the same time he made a will which, after a number of bequests, devised
the residue of his property to his six children. Later he made another
will, differing in some respects, but not in respect of the names of his
residuary devisees, and this will was probated. He died March 9, 1913,
one year and four months after the execution of the deed. The plain-
tiffs, in proof of undue influence, offer evidence tending to show that
the consideration for the farm, which was $18,000, was wholly inade-
quate; that the transaction was unusual in that the consideration was
all secured by a mortgage at a low rate of interest and on long time; that
the defendant and his wife kept the other children from communicating
with their father; that the father declared at one time or another that
the defendant and his wife wanted him to sell the farm and to change
his will, and that the defendant had threatened to beat them out of the
farm property. The contesting children also suggest that their father
was addicted to drinking and that this affected his mind. The proof
fails to support a substantial claim in this regard. His mental capacity
is beyond question. The consideration was found by the court to be
inadequate and it was inadequate. The father reserved a life estate.
The value of this is not shown; but the property, while valued as high
as $30,000, or even higher, by interested witnesses, was put at a value

of from $22,000 to $25,000 by others having no apparent interest. Prior to the sale there had been some talk among the children about a sale to George. They knew that he wanted to buy. At one time a price of $14,000 was mentioned. There is testimony that some of the plaintiffs interested, or their husbands, evidently thinking the price inadequate, offered to purchase, or procure a purchaser, at as much as $25,000 or $30,000. Nothing came of it. It is true that the price paid for the farm was less than its value and that the purchase money mortgage bore an unusually low rate of interest and ran for a long period; but it was for the old gentleman to dispose of his property as he wished, making to his son a gift of it, or giving it to him for less than its full consideration, if he chose. There is evidence that the defendant and his wife kept the old gentleman from his other children. The plaintiffs reiterated this claim. Several instances are cited. It seems to us that their importance is exaggerated. The same is true of the claim that the defendant threatened to beat the plaintiffs out of the farm. The deed was not executed in secret nor its existence kept secret. It was recorded. There was no concealment. There is testimony that the old gentleman told his neighbors of the sale and gave reasons why he wanted George to have the farm. The deed was drawn by an attorney whom he knew, and was witnessed by a banker with whom he had done business for years. Their testimony makes the transaction a fair one. He told the attorney, if his testimony is credited, this: "He said he was going to sell his farm to his son George; he said George has always stayed with me and is the only one of my children who is a farmer and I want him to have the farm; he has a large family all of whom have been born on this farm, and I think, he says, that he should be the one that should handle it—can handle it."

There is evidence tending to prove that it was the mutual intention of the deceased and his wife, at the time of her death in February, 1911, that the farm should go to the children. The thought of deeding it to the son came later. There are circumstances justifying a suspicion that undue influence was exercised, and there are circumstances which furnish grounds of suspicion relative to the subsequent dealings between the defendant and his father; but, upon a thorough consideration of a

long record, we have a definite feeling that the finding of undue influence is not reasonably sustained and that there should be a new trial.

George claims that about March 30, 1912, perhaps a day or two before, he paid his father $3,000 on the mortgage. There was at that time indorsed upon the note, apparently at Cannon Falls, a memorandum to the effect that $1,000 or more might be paid at any interest due date. The court found that the $3,000 was not paid. It also found that two annual interest payments claimed by defendant to have been made to his father were not made. These findings are important upon the question of the relief to which the defendant should be entitled in the event that the deed is canceled. On March 30, 1912, the defendant deposited in the Citizens' Bank of Cannon Falls several thousand dollars, for which he took certificates of deposit, and on the same day surrendered certificates some thousands less in amount. The defendant's statement as to the payment of the $3,000 is a bare statement of the fact of payment in cash. The surrounding circumstances are not shown.

In view of another trial it may be noted that the defendant was restricted in his proof of knowledge within the possession of the old gentleman's attorney. In this connection Coates v. Semper, 82 Minn. 460, 85 N. W. 217, and In re Layman's Will, 40 Minn. 371, 42 N. W. 286, may be examined. There was some confusion upon the admissibility of evidence of the declarations of the deceased and the effect of such testimony in proof of undue influence and the effect had upon the mind of the deceased. This can be obviated upon a new trial. See Woodville v. Morrill, 130 Minn. 92, 153 N. W. 131; Burmeister v. Gust, 117 Minn. 247, 135 N. W. 980; In re Hess' Will, 48 Minn. 504, 51 N. W. 614, 31 Am. St. 665; 3 Wigmore, Ev. § 1734, et seq.; Note, 107 Am. St. 459. It may be noted that the order for judgment against the executor, who was a codefendant, for $600, the amount paid by George to the executor as interest, is erroneous. It may be suggested if a new trial results in the cancelation of the deed that equity must be done the son. If he paid the $3,000 to his father, and interest, he is entitled to reimbursement; and he should be protected in the agreement which it appears from the

evidence he had while a tenant to a removal of the improvements, very considerable in amount, which he put upon the property.

Order reversed.

Schaller, J., having been of counsel, took no part.