## IN THE MATTER OF THE ESTATE OF MARIA JERNBERG, DECEDENT.[1]

December 1, 1922.

No. 23,019.

**Mental capacity of testatrix sustained by evidence.**

1. A testatrix, in order to make a valid will, must understand the nature, situation and extent of her property, the claims of others upon her bounty, and must be able to hold these things in mind long enough to form a rational judgment concerning them. Neither physical weakness, nor old age, nor unwisdom of provisions will render a will invalid. The evidence in this case is sufficient to sustain a finding of mental capacity of the testatrix to make a will.

**Evidence of undue influence inconclusive.**

2. The evidence also sustains a finding that the will was not the result of undue influence. Undue influence may be shown by circumstantial evidence. Facts and circumstances detailed in the opinion, tending to show undue influence, were not conclusive, in view of direct evidence that no influence was exerted.

**What facts may make out prima facie case of undue influence.**

3. Such facts as opportunity to exert influence, confidential relationship of a beneficiary in the will, coupled with disinheritance of relatives and other singularity of provision are important and may make

[1]Reported in 190 N. W. 990.

out a prima facie case of undue influence. It is not best to say, however, that the burden of proof shifts. The decision and memorandum of the district judge does not indicate that he ignored the applicable rules of law.

**Execution of will by mark sufficient in case of illness.**

4. The evidence is sufficient to show due execution of the will. Testatrix was ill and weak. She signed by mark with assistance. The execution is sufficient, though when in health she could write.

Charles Peterson petitioned the probate court for St. Louis county for the allowance and probate of the will of Maria Jernberg, deceased. Swan Londeen filed objections on the grounds that at the time of its execution Maria Jernberg did not have sufficient mental capacity to make a will and that the execution of the instrument was procured by undue influence exercised over her by Reverend C. O. Swan. From an order, Webster, J., acting judge of probate, disallowing the will, Carl O. Swan and others appealed to the district court for that county where the appeal was heard by Fesler, J., who made findings and reversed the order of the probate court. From an order denying their motion for a new trial, contestants appealed. Affirmed.

*H. N. Jenson, Fryberger, Fulton, Hoshour & Ziemer* and *Moritz Heim,* for contestants.

*Baldwin, Baldwin, Holmes & Mayall,* for respondents.

HALLAM, J.

Maria Jernberg, a woman 70 years old, made a will while sick at a hospital in Duluth, on September 13, 1919. On September 16 she died. Mrs. Jernberg was a widow and childless. She had a brother living near Detroit, Minnesota, and a brother and sister in Sweden. To these she left nothing. She left a small amount to relatives of her husband. She left $500 to her pastor and spiritual adviser, Rev. C. O. Swan, and the balance, approximately $12,000 in value, to these institutions: To Bethphage, a charitable institution at Axtell, Nebraska, she left $500, and the balance to Bethany Home, of Duluth.

The will was contested by the heirs at law of deceased, on the ground that deceased had not sufficient capacity to make a will, and on the further ground that undue influence was exerted over her by Rev. Swan. The probate court disallowed the will. On appeal to the district court that court allowed the will. Contestants appeal.

1. The district court found that deceased had mental capacity to make a will. This finding is sustained by the evidence. The law is well settled. A testatrix, in order to make a valid will, must understand the nature, situation and extent of her property and the claims of others upon her bounty or her remembrance, and she must be able to hold these things in her mind long enough to form a rational judgment concerning them. Schleiderer v. Gergen, 129 Minn. 248, 152 N. W. 541. See also Lewis v. Murray, 131 Minn. 439, 155 N. W. 392.

Deceased was very ill. She had submitted to a surgical operation that day, an injection of fluid into her veins. But physical weakness does not signify mental incapacity. Schmidt v. Schmidt, 47 Minn. 451, 50 N. W. 598. Nor does old age. Little v. Little, 83 Minn. 324, 86 N. W. 408. That the will disregards family ties or is unwise or unjust, or is, for other reasons, such as the court does not approve, does not signify that it is invalid. If there be no mental infirmity (Foster v. Dearborn, 48 Minn. 504, 51 N. W. 614, 31 Am. St. 665) or undue influence (Bush v. Hetherington, 132 Minn. 379, 157 N. W. 505), such a will must stand. The attending physician of deceased testified that for a day or two after the operation her mental condition was quite normal and that in his opinion she was competent to make a will. A nurse, who was called to witness the will, testified that she appeared to understand what she was doing. The will was prepared in the presence of deceased by a reputable attorney, and he testified that her mind was very clear, and that he knew she comprehended the will and was capable of making it. There is evidence that two days later she gave directions that a payment was due her on that day and gave directions for its collection. There is evidence that on num-

erous occasions long prior she had made remarks to friends which foreshadowed the will that was drawn.

There is evidence that a few hours before she made the will she dictated to her pastor the names of those she desired to remember and the amount to be given to each. The name of one brother appeared on this list as a prospective beneficiary to the extent of $200. When the will was drawn he was omitted. It is claimed that this indicates want of mental capacity. But the attorney who drew the will testified that he asked her as to bequests to her relatives and she said she wanted to make none. The inconsistency between the list and the will is evidence to be considered as bearing on her mental capacity, but is not conclusive of incapacity.

The evidence as to mental capacity was sufficient.

2. Contestants contend that the will was the result of undue influence exerted by Rev. Swan. The facts are: Rev. Swan was her pastor and had her confidence. He suggested to her that she make a will. He talked with her as to its terms and, as above stated, took down notes from which the will was drawn. He called the lawyer who drew the will, and called the nurse who witnessed it. He was a beneficiary under the will and the major part of her estate was given to a charitable institution of which he was director and treasurer. There is evidence that he evaded calling her relatives and that in talking to them he evaded the facts as to the will. These facts taken in connection with her weakened physical condition and the fact that her relatives, some of them poor, were not mentioned at all, it is claimed, required a finding that the will was the result of undue influence. The probate judge agreed with contestants that these facts showed undue influence.

Proponents argue, on the other hand, that the will was prepared by a reputable and competent lawyer with no possible influence present; that, as above stated, he asked her as to bequests to her relatives and she said she wanted to make none; that he read the will over to her item by item and explained each item to her separately; and that, without influence of any kind, she, with proper intelligence and understanding, approved and executed it. He is corroborated by the nurse who witnessed the will, and, as above

stated, the will was drawn in substantial accordance with what several witnesses stated had been her expressed purpose for some time past. The district judge took the view of proponents that undue influence was not proven.

The direct evidence sustains the district judge. But undue influence may be proved by circumstantial evidence. Often no other class of proof is available. Thill v. Freiermuth, 132 Minn. 242, 156 N. W. 260. The real question is, was the mind of the testator so controlled by the influence of another, however exerted, that the testator was not left to act voluntarily and understandingly, Mitchell v. Mitchell, 43 Minn. 73, 44 N. W. 885, or, was the free agency of the testator destroyed at the time the will was made and the will of another substituted for her own. Matter of Will of Nelson, 39 Minn. 204, 39 N. W. 143; Woodville v. Morrill, 130 Minn. 92, 153 N. W. 131. Weighing all evidence, direct and circumstantial, we think it sustains the decision of the district judge.

3. The district judge accompanied his decision by a memorandum in which he said: "The exhaustive and able briefs of counsel have been read with care and the presumptions and rules applicable to will cases have been given careful attention. But there does not seem to be much room for their application here." Counsel for contestants contend that this indicates that the court failed to apply the applicable rules of law, or, in other words, that the court failed to give full probative effect to the circumstances surrounding the execution of the will.

Opportunity to exercise influence, or the existence of confidential relationship between testator and beneficiary is not proof, standing alone, that undue influence was in fact brought to bear; Matter of Will of Nelson, 39 Minn. 204, 39 N. W. 143; Foster v. Dearborn, 48 Minn. 504, 51 N. W. 614; Page, Wills, §§ 409, 421; Underhill, Wills, § 145, et seq.; Gardner, Wills, pp. 156-169. When such opportunity arises out of confidential relationship, such as that of religious adviser and parishioner, and there are bequests to the one sustaining the confidential relation, and also active participation on his part in the preparation of the will, and acts of evasion on his part, these facts, coupled with singularity of provisions in the will

and disinheritance of relatives, are indeed important circumstances to be considered in passing on the validity of the will and may sustain an inference of undue influence. Some authorities state that when such facts and circumstances appear, undue influence is presumed and the burden of proof is shifted to the proponent. 40 Cyc. 1151. In Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502, this in substance is stated as the general trend of opinion. In Tyner v. Varien, 97 Minn. 181, 106 N. W. 898, the court uses the language that when the contestants have made a prima facie case, by the production of evidence from which the presumption of undue influence arises, "the burden is then upon the proponents to show that the instrument is the will of the testator." The court adds, however: "It is not very material whether we say that in such case the burden shifts, or that the evidence produced, aided by the presumption which arises therefrom, is evidence sufficient to make a prima facie case. What is meant is that a point is reached when the contestant prevails unless the proponent assumes the obligations of going forward with his evidence."

We think it an unfortunate use of terms to say that the burden of proof shifts. It is better to say the burden is on the contestant throughout, but that facts such as we have detailed may make out a prima facie case, and, unopposed, may prevail. Lebens v. Wolf, 138 Minn. 435, 165 N. W. 276, L. R. A. 1918C, 868.

The principles we have stated are, without doubt, the principles which the trial court had in mind. We do not think he meant by his memorandum to ignore them, but rather to make it clear that he considered the direct testimony so strong that inference or presumption could not prevail. In this we cannot say he was wrong.

4. The contention is made that there was no execution of the will. The evidence is that while the testatrix was signing her name the pen fell from her hand and her attorney put the pen in her hand and assisted her to make her mark. She was able, when in health, to write. We find, however, no difficulty in sustaining the finding that the execution of the will was sufficient.

Order affirmed.