## SUMNER ENGELSON v. EQUITY FARMS, INC. AND ANOTHER.[1]

March 3, 1933.

No. 28,966.

*S. H. Eckman,* for appellants.
*Herbert H. Hoar,* for respondent.

DIBELL, JUSTICE.

Action to have a deed of land in Mower county, executed by the plaintiff to the defendant Equity Farms, Inc. declared null and

[1]Reported in 247 N. W. 223.

void; to require the defendant corporation to execute and deliver to the plaintiff a deed of the property; and to require the plaintiff to surrender his right to certain corporate stock of the Equity Farms, Inc. allotted to him for the deed. There was judgment for the plaintiff, and the defendants appeal.

The defendant Equity Farms, Inc. was incorporated in November, 1928, at Duluth. The defendant Oredson is a majority stockholder. He owns 751 shares. His wife, Emily Oredson, owns 375 shares. The plaintiff owns 374 shares.

In March, 1928, the plaintiff, Sumner Engelson, became the owner by inheritance from his father of a quarter section of land in Mower county. He is a nephew of Mrs. Oredson, who was a sister of his father and the wife of the defendant Dr. Oredson.

The plaintiff was 32 years old at the time of the trial in 1931. Commencing about 1917 and until his father's death in March, 1928, he lived in Dr. Oredson's family in Duluth, except for about a year or two. He was subnormal. Dr. Oredson exerted great influence over him. The trial court finds that he prevailed upon him by undue influence to execute to the defendant Equity Farms, Inc. a deed to the quarter section which had come from his father. Into the corporation had been put three other quarter sections, which represented the contribution of Mrs. Oredson. This deed was dated December 1, 1928, and recorded December 3, 1928. The stock was never actually delivered to the plaintiff or taken over by him. He received no consideration for the deed other than the certificate of stock for 374 shares allotted to him and which he might have taken or might now take.

Dr. Oredson was a man of very considerable and varied experience, had an academic and professional education, was actively engaged in the practice of medicine in Duluth, understood farming, was a man of force and determination, and quite beyond the powers of resistance of plaintiff. It is rather to be gathered from the record that Dr. and Mrs. Oredson in the years that the plaintiff was with them tried to make of him as much as they could. They, especially Mrs. Oredson, were ambitious for him. They were kind

to him. She was influenced by family pride. Her father had been an early pioneer of Mower county. He had acquired lands, which included the quarter section belonging to the plaintiff, and apparently was prosperous. Before her father's death he had deeded to her a section which would have cut out the plaintiff's father altogether. Three years before the death of plaintiff's father in 1928 she deeded half of the section to him. There had been some trouble between the family and plaintiff's father and mother which was showing itself. Mrs. Oredson was ambitious that the plaintiff should do well and become a man of prominence in Mower county. Her father had been connected with the bank. She thought it would be well that plaintiff get in the same line of business and was anxious that the family realty holdings be kept together and conducted as a unit. She tried to educate him for such a life. He did not graduate from high school until about 30 years of age. The Oredsons may have become discouraged as the years went, but they seem to have treated their nephew considerately.

Just what constitutes undue influence is not easily told. It is sort of self-defining. It may be proved circumstantially, as it usually is. It cannot be proved by mere conjecture. The burden of proving it is on the one who asserts it. In re Will of Storer, 28 Minn. 9, 8 N. W. 827; In re Will of Nelson, 39 Minn. 204, 39 N. W. 143; Mitchell v. Mitchell, 43 Minn. 73, 44 N. W. 885; Howard v. Farr, 115 Minn. 86, 131 N. W. 1071; 6 Dunnell, Minn. Dig. (2 ed. & Supp.) §§ 9949-9952; id. §§ 10238-10243.

The trial court could find that the Oredsons had determined that the land should be conducted as a unit. A crudely formed corporation was the instrumentality. The plaintiff would have a minority interest. They were not acting with a distinctly bad purpose. But it may be inferred that the young man was putty in the doctor's hands. The plaintiff was put on the farm after the incorporation without much success. The doctor was managing it from Duluth. His letters to the plaintiff were of a complaining and often humiliating nature.

Considering the way in which Dr. Oredson lived with this boy, his dominating character, the weakness of the boy, and his influence

over him, we come to the view that the finding of undue influence should be sustained. A different conclusion might have been reached by the trial court. It would be unfortunate for the plaintiff if it were. A minority stockholder would not fare well. The doctor was occupying almost a parental relationship toward the plaintiff and should not be allowed to take advantage of the situation which has come. There seem to be no other stockholders than the Oredsons and the plaintiff, and their holdings may be readjusted without much difficulty.

Judgment affirmed.