## IN RE ESTATE OF ANNA MAZANEC.
### JOCELYN MAZANEC AND OTHERS v. DELLA HUNA AND OTHERS.[1]

February 3, 1939.

Nos. 31,932, 31,933.

*Kyle & Kyle,* for appellants Jerome Frank Mazanec and Lillian Zenker.

*Doyle & Allard,* for appellants Jocelyn Mazanec and Walter T. Ryan, administrator *c. t. a.*

[1]Reported in 283 N. W. 745.

*Humphrey Barton* and *Walter T. Mack,* for respondent Della Huna.

*Albert J. Mueller,* for respondents Otto Mazanec and Camilla Cournoyer.

GALLAGHER, CHIEF JUSTICE.

Appeals from two judgments involving a will contest. They were consolidated for hearing in this court.

Anna Mazanec, a resident of Ramsey county, died on March 30, 1937, leaving a will dated March 8, 1937. She was survived by six children. By the terms of this will she gave to a son, Jerome, with whom she lived at the time of her death and for some years prior thereto, her home, a vacant lot adjoining it, and $400; to her son Jocelyn, $400; to her daughter Della Huna, $5; to her son Otto, $225; to her daughter Camilla Cournoyer, $5; and to her daughter Lillian Zenker, all of the rest of her property, real and personal. Jocelyn, who looked after decedent's business affairs since her husband's death about ten years before, was named as executor.

Decedent's estate consisted of approximately $4,700 in cash, the house and lot worth about $3,000, and an adjoining lot worth about $400. The real estate stood in decedent's name prior to her husband's death. The personal property was decreed to decedent and the children in the course of administration of the husband's estate. The children's share was later transferred to the mother. Reference to this transfer will hereinafter be made.

Shortly after decedent's death Jocelyn petitioned the probate court of Ramsey county for probate of the will. Attached to his petition was a declination to act as executor and a request that the probate court appoint an administrator *c. t. a.* Della and Otto in due time filed written objections to the allowance of the will, claiming (1) that it was not properly executed; (2) that decedent was not of sound mind at the time of the execution; and (3) that undue influence was exercised over her by Jerome, Jocelyn, Lillian, and Gustave F. Zenker, husband of Lillian.

The probate court found that the will was executed according to law by the decedent, who was then of sound mind and under no

restraint. Separate appeals to district court were taken by Della and Otto. Camilla joined in Otto's appeal, and the two appeals were consolidated for trial in that court and proper issues were framed.

The district court found against contestants on three points, and, apparently under the mistaken assumption that the parties had consented to litigate the issue, found that part of the personal property held by decedent at her death was impressed with a trust and that a transfer of Northern States Power Company stock to the son Jocelyn during decedent's lifetime was void and ineffective.

It appears that the stock in question was decreed to decedent and the children about ten years before her death in the administration of her husband's estate. The court found that on the day of the making of the final decree respecting that estate, Jocelyn and his then attorney, Ferdinand Barta, induced the other five children to authorize payment of their respective shares in said estate to their mother upon a promise made by Jocelyn and Barta, as her agent and attorney, that said property would be held in trust and returned to them at the mother's death unless necessarily used for her maintenance and support and that the income from the property assigned was sufficient to provide for the mother during her lifetime; that she, in violation of the terms of the agreement, had transferred, during her lifetime, a part of the property consisting of certain shares of Northern States Power Company stock to her son Jocelyn.

The district court first affirmed the order of the probate court admitting the will to probate; found that the children were entitled to equal shares of the property held in trust; and directed the administrator *c. t. a.* to demand a return of the stock assigned to Jocelyn and to institute proceedings for its recovery if delivery was refused.

Motions for amended findings or a new trial were made by proponents and contestants. The result was an order (1) striking out that part of the original findings to the effect that no undue influence was exercised and substituting a finding that the will was executed because of the undue influence exercised by proponents

and (2) striking out the findings and conclusions directing a return of the so-called trust funds to the children. The trial court then held the will to be invalid because of undue influence exercised over decedent by proponents and reversed the order of the probate court admitting it to probate. Separate judgments followed, from which these appeals were taken.

In our opinion the case presents only one question: "Is there sufficient evidence to sustain the court's finding of undue influence?" The answer to that question is determinative of the issue raised by the appeal. To reach it we must examine the record.

Decedent at the time of her death was 82 years of age. She was afflicted with a goiter and under medical care. Since her husband's death in 1927, the son Jerome, who was unmarried and in poor health, lived with his mother in her home. He was not able to accept outside employment but assisted the mother with the household work. The other children were all married and lived in St. Paul. Lillian, who was the last to marry, did the washing, ironing, and cleaning at her mother's home for about 17 years prior to the latter's death and was a frequent visitor at the home. The other children called from time to time, and some of them rendered some assistance to the mother. Jocelyn looked after her meager business affairs.

Aside from a controversy between Lillian Zenker and Della Huna which occurred at the decedent's home some months before her death, the record does not disclose any particular ill will that existed between the members of the family. It does disclose a degree of laxity on the part of some of the children in visiting their mother.

On March 6, 1937, the husband of Lillian Zenker called at the office of Doyle & Allard, attorneys, and advised them that Mrs. Mazanec wanted to make a will. The attorneys called at decedent's home that day and prepared a will. Mr. Allard testified that Jerome and Lillian were in the room when the terms of the will were being discussed but did not participate in the discussion. He also testified that decedent stated that Lillian had taken care of

her and that Jerome had lived with her and that she wanted to give him the home.

Two days later Jocelyn Mazanec called at the attorneys' office and stated that his mother wanted to make some changes in the will. That afternoon attorneys Doyle and Allard again went to the Mazanec home. She stated that since making the will two days before she learned that she had $4,700 in the bank instead of $3,700 which she thought she had at the time it was drafted. She told Mr. Allard that she wanted to divide her property fairly evenly between her children Jerome, Jocelyn, and Lillian, and then directed the making of a new will embodying the terms of the old one with the exception that Jerome was given an additional $400 in cash; Jocelyn an additional $350, and Otto an additional $215. Mr. Allard called testator's attention to the fact that Jocelyn was getting only $400, whereupon she informed him that she had already transferred to Jocelyn certain shares of Northern States Power stock. At Allard's suggestion the old will was destroyed.

The record contains some testimony upon the part of a niece and her husband to the effect that about five years previous to the making of the will decedent stated to the witnesses on a visit to her home that "they" were trying to get her to make a will but that she did not wish to make one and preferred to let her property go in the manner provided by law as did her husband. There was no testimony as to who decedent meant by "they."

While there was considerable testimony concerning the division of the property subsequent to the father's death and the circumstances under which it was conveyed to the mother, discussion of this feature of the case would not be helpful because that matter had no bearing on the execution of the will under consideration. The question of the rights of the parties in the property transferred to the mother by the children is not properly before the court in this proceeding and may be determined in a proper proceeding instituted for that purpose.

The legal principles to be applied in determining whether or not the evidence in this case sustains a finding of undue influence are well settled. Subject to limitations not here relevant, a testator, if

competent, has power to dispose of his property in any way he chooses by a properly executed will, provided such will is not the product of undue influence exerted by others. In re Storer's Will, 28 Minn. 9, 11, 8 N. W. 827; Mitchell v. Mitchell, 43 Minn. 73, 76, 44 N. W. 885; In re Hess' Will, 48 Minn. 504, 512, 51 N. W. 614, 31 A. S. R. 665; Tyner v. Varien, 97 Minn. 181, 182, 106 N. W. 898; In re Estate of Jenks, 164 Minn. 377, 383, 205 N. W. 271.

The means by which a testator is induced to substitute the volition of another for his own in making a will constitutes undue influence. In re Nelson's Will, 39 Minn. 204, 206, 39 N. W. 143; Mitchell v. Mitchell, *supra*, at p. 76 (N. W. p. 885); Schmidt v. Schmidt, 47 Minn. 451, 457, 50 N. W. 598; Tyner v. Varien, *supra*, at p. 183 (N. W. p. 898); Howard v. Farr, 115 Minn. 86, 92, 131 N. W. 1071; In re Estate of Jenks, *supra*, at p. 383 (N. W. p. 271). To make a case of undue influence, the will must express the mind and intent of someone else and not the testator. In re Nelson's Will, 39 Minn. 204, 206, 39 N. W. 143; Mitchell v. Mitchell, *supra*, at p. 76 (N. W. p. 885); Schmidt v. Schmidt, 47 Minn. 451, 457, 50 N. W. 598; Tyner v. Varien, *supra*, at p. 182 (N. W. p. 898); Howard v. Farr, 115 Minn. 86, 92, 131 N. W. 1071; In re Estate of Jenks, *supra*, at p. 383 (N. W. p. 271). The burden of proving undue influence is on the contestant. Mitchell v. Mitchell, *supra*, at p. 76 (N. W. p. 885); In re Estate of Jenks, *supra*, at p. 383 (N. W. p. 271); In re Estate of Keeley, 167 Minn. 120, 208 N. W. 535. Proof of undue influence must be clear and convincing. It is not enough to raise a mere suspicion or conjecture. See In re Nelson's Will, *supra*, at p. 206 (N. W. p. 143); In re Hess' Will, *supra*, at p. 511 (N. W. p. 614); In re Estate of Jenks, *supra*, at p. 383 (N. W. p. 271). There must be evidence that undue influence was in fact exerted. It is not sufficient to show that a party benefited by a will had the motive and opportunity to exert such influence; there must be evidence that he did exert it. In re Nelson's Will, *supra*, at p. 208 (N. W. p. 143); In re Hess' Will, *supra*, at p. 511 (N. W. p. 614); Tyner v. Varien, *supra*, at p. 183 (N. W. p. 898); Buck v. Buck, 122 Minn. 463, 470, 142 N. W. 729; Berg v. Berg, 201 Minn. 179, 186, 275 N. W. 836.

A relationship of confidence between the testator and a beneficiary is not sufficient to prove undue influence. It must be shown that influence was exerted in a special degree to procure a will peculiarly acceptable to a beneficiary. In re Storer's Will, *supra*, at p. 11 (N. W. p. 827); In re Estate of Jernberg, 153 Minn. 458, 462, 190 N. W. 990; In re Estate of Simmons, 156 Minn. 144, 147, 194 N. W. 330.

Inequality of distribution is not proof sufficient to support a finding of undue influence. Mere inequality, however great, in the distribution of the property among the children or relatives, is no evidence of undue influence, nor is it made such by evidence of an impaired mind. If it were evidence from which a jury might find undue influence to avoid the will, the issue practically presented to the jury in every case of this kind would be: Is the will such as the jury, if in the testator's circumstances, would have made? Few wills could stand if such were the test. In re Storer's Will, *supra*, at p. 11 (N. W. p. 827); In re Nelson's Will, *supra*, at p. 209 (N. W. p. 143); In re Hess' Will, *supra*, at p. 514 (N. W. p. 614); In re Estate of Jenks, *supra*, at p. 383 (N. W. p. 271).

We do not mean to imply that evidence which standing alone does not support a finding of undue influence cannot in any case support such a finding when considered together with other similar evidence. But from a careful examination of the record in this case we have concluded that the evidence adduced to support the charge of undue influence was not sufficient to sustain the burden of proof imposed by law on the contestants. That those children who had opportunity and motive to influence the testator, including Jocelyn, who to a limited extent acted in a fiduciary capacity in relation to his mother, received the greater part of the estate, summarizes the substance of the evidence in support of the charge.

It is not difficult to understand why the mother might feel disposed to give her home to the disabled son Jerome, who had lived with her for so many years, and to make special provision for the daughter Lillian, who admittedly assisted her diligently for some 17 years. Such an attitude is natural on the part of parents and is often demonstrated in will cases. The bequest to Jocelyn was

not unduly large, and whatever controversy exists as to the ownership of the Northern States Power Company stock may still be determined. Without difficulty we reach the conclusion that the evidence does not sustain a finding of undue influence, and so hold.

The judgments appealed from are reversed with instructions to enter judgment in accordance with the order of the probate court.