## IN THE MATTER OF THE ESTATE OF LUCY D. SIMMONS. FRANCES L. BOYNTON v. FRANK A. SIMMONS, AND OTHERS.[1]

June 22, 1923.

No. 23,367.

**Destruction of will and execution of another caused by undue influence.**

1. The evidence sustains the finding of the jury that a will made by the testatrix in 1911 was destroyed in 1916 through the undue influence of the appellant, the proponent of a later will, made in 1916; and that the 1916 will, made at the time of the destruction of the 1911 will, was induced by the undue influence of such proponent.

**Charge as to inference to be drawn from gift error.**

2. The court erred in charging the jury that where one who receives a gift "occupies a position of trust and confidence towards the one who makes the gift, that fact will warrant an inference or a presumption that such gift or such will was induced by undue influence."

**Executrix and beneficiary subject to cross-examination.**

3. The proponent of the second will, who was named as executrix, and was a beneficiary, and who actively engaged in sustaining it and

[1]Reported in 194 N. W. 330.

opposing the 1911 will, in which she was also named executrix and was a beneficiary, was subject to cross-examination under the statute, G. S. 1913, § 8377, as an adverse party.

Two purported wills of Lucy D. Simmons were before the probate court for Dakota county for allowance. The later will was admitted to probate. From the allowance of that will Frank A. Simmons and others appealed to the district court for that county where the appeal was heard by Converse, J. The jury answered in the affirmative the questions quoted in the first paragraph of the opinion. The court made findings and ordered the earlier will admitted to probate. From an order denying her motion to amend the findings and conclusions or for a new trial, Frances L. Boynton appealed. Reversed.

*Moore, Oppenheimer, Peterson & Dickson*, for appellant.

*C. L. Lowell* and *Shaw, Safford, Ray & Shaw*, for respondents.

DIBELL, J.

Lucy D. Simmons made two wills, one in February, 1911, the other in May, 1916. The first will was destroyed in May, 1916, when the second one was made. The 1916 will contained no revoking clause. The probate court admitted the 1916 will to probate. On appeal to the district court these two questions were submitted to the jury:

1. Was the first will of Lucy D. Simmons, which was executed in February, 1911, and which was destroyed in May, 1916, so destroyed by reason of undue influence exerted by Frances L. Boynton?

2. Was the second will of Lucy D. Simmons, which was executed in May, 1916, executed as the result of undue influence exerted over the said Lucy D. Simmons by Frances L. Boynton?

Both questions were answered in the affirmative. The court made findings and established the 1911 will. Miss Boynton appeals from the order denying her motion for a new trial.

The questions of importance are these:

(1) Does the evidence sustain the findings of the jury upon the question of undue influence?

(2) Did the court err in charging the jury that the position of trust and confidence occupied by Miss Boynton warranted an inference or presumption of undue influence?

(3) Did the court err in permitting Miss Boynton to be called for cross-examination under the statute?

1. Mrs. Simmons was mentally afflicted for many years. She was at different hospitals. In May, 1911, she was committed to the Rochester state hospital. She was paroled in 1912 and discharged in 1913. She was restored to competency by the probate court in 1915. She was in the Latto Hospital in Hastings several times after her discharge from Rochester. She returned to Rochester in 1918, and died there on March 25, 1921, at the age of 77. Miss Boynton was appointed her guardian on March 29, 1911, and continued as such until her restoration to competency on May 25, 1915. She was a friend of the Simmons family. Under the guardianship she had charge of Mrs. Simmons' business matters. After her restoration to capacity she had a power of attorney to attend to her affairs. She continued to look after her affairs until her death. She did not render an account as guardian. The first will of Mrs. Simmons remembered the children of her deceased husband by a prior marriage, from whom the estate largely came, and gave Miss Boynton $500. The later will remembered such children less generously, omitted one altogether, gave Miss Boynton some real estate in Hastings, and made her her residuary devisee. She was named executrix in both wills. The circumstances surrounding the destruction of the 1911 will are confused. There is a marked discrepancy, unfavorable to Miss Boynton, between the testimony given in the probate court and that given in the district court. Mrs. Simmons was a frail sick woman. Miss Boynton was a successful business woman. There was a relation between them of trust and confidence. To some extent at least Miss Boynton was concerned with the execution of the 1916 will. She did not draw it. We make no effort to detail all the pertinent facts tending to show the presence or absence of undue influence. The evidence justified the

jury in their answers to the two questions. Their findings are well sustained.

2. The court charged the jury as follows:

"It is also the law, gentlemen, that where a party who receives a gift—either by will or otherwise—occupies a position of trust and confidence towards the one who makes the gift, that fact will warrant an inference or a presumption that such gift or such will was induced by undue influence. During all the time herein, Miss Frances L. Boynton occupied a position of trust and confidence with reference to Lucy D. Simmons, and in your consideration of this case, you may take that fact into consideration and give to it such force and effect as in your judgment and upon all the evidence in the case, you deem it entitled to."

The part of the charge which gives trouble is that which states that if one receiving a gift "occupies a position of trust and confidence towards the one who makes the gift, that fact will warrant an inference or a presumption that such gift or such will was induced by undue influence." If this is the rule, one contesting a will upon the ground of undue influence makes a case upon proof that the beneficiary occupied a position of trust and confidence towards the testator. With that proof he may go to the jury and take a favorable verdict. True, adverse parties may oppose the case thus made; but unopposed, the existence of the relation, under the rule, justifies a jury in making a finding of undue influence; and though opposed the rule operates at the trial and on review in favor of a finding for the contestant.

The court did not say that the existence of a confidential relation raised a legal presumption of undue influence; that is, that the law presumed undue influence from the confidential relation. Manifestly such a statement would be error. But no more does a confidential relation alone and of itself, unsupported by other probative facts, justify an inference or presumption, considered as one of fact, that the making of a will is the result of undue influence. A gift by will or a gift inter vivos may be the natural result of a confidential relation. Between parent and child and in other family relationships it is expected—it is the natural thing. A gift to a con-

fidential employe or adviser is not necessarily suggestive of influence unduly exercised; indeed, in such a relationship a gift, under given circumstances, may be natural, when, if made to a stranger, it would be unusual. The 1916 will gave as a reason for the gifts to Miss Boynton "that she has been to me for years all that a kind and affectionate daughter could be." A reason was stated in the 1911 will for remembering her. The statement in the will, if it embodied Mrs. Simmons' real feeling, can be urged in support of the gifts to Miss Boynton against the claim of undue influence prompting them, just as other facts in evidence, apparently prejudicial to her, may be the basis of an argument that undue influence was used. The confidential relationship between the donor and donee is a fact to be considered, sometimes of great force and sometimes of little moment, sometimes tending to prove and sometimes tending to disprove undue influence. So, in Fischer v. Sperl, 94 Minn. 421, 103 N. W. 502, it was held that the relationship of parent and child did not put upon the child the burden of showing that a will in his favor was not induced by undue influence. Nor does such relationship put upon the child the burden of proving that there was no undue influence inducing a gift inter vivos, though there should be close scrutiny. Rader v. Rader, 108 Minn. 139, 121 N. W. 393; Prescott v. Johnson, 91 Minn. 273, 97 N. W. 891. The same result was reached where there was a gift by a sister to her brothers claimed to be the result of undue influence. Howard v. Farr, 115 Minn. 86, 131 N. W. 1071.

The prevailing rule, as announced in the texts, is that the relation of trust or confidence between the testator and the beneficiary does not give rise to a presumption and is not prima facie proof of undue influence. Gardner, Wills, pp. 159-169; Page, Wills, §§ 409-421; 1 Underhill, Wills, § 145, et seq; 2 Alexander, Wills, § 593, et seq; 1 Schouler, Wills, § 275, et seq. The case In re Estate of Jernberg, 153 Minn. 458, 190 N. W. 990, our most recent case, involving the gift in her will by a woman to her pastor, in respect of which he was not altogether inactive, is in accord. There the court said [at page 462]:

"Opportunity to exercise influence, or the existence of confidential relationship between testator and beneficiary is not proof, standing alone, that undue influence was in fact brought to bear."

Where the beneficiary sustains confidential relations and drafts the will, or controls its drafting, it is variously stated, the phraseology and perhaps the precise thought changing from case to case, with some attendant confusion of expression and meaning, that a presumption of undue influence arises, or that an inference to that effect may be drawn as a fact, or that the facts stated make a prima facie case, or that the case is one for scrutiny. Page, Wills, §§ 413-414; Gardner, Wills, pp. 167-169; 1 Underhill, Wills, § 137; note 28 L. R. A. (N. S.) 270; 5 Randall, Instructions to Juries, §§ 5307-5308. The rule, whatever its proper scope, is not of particular application here. It was not embodied in the charge. There is evidence that Miss Boynton interested herself to some extent in the execution of the will. That evidence is proper for consideration upon the issue of undue influence. The inference to be drawn is for the jury. This rule is referred to in In re Estate of Jernberg, 153 Minn. 458, 190 N. W. 990, where the court, discussing it but not referring to a charge to the jury, said [at page 462]:

"When such opportunity arises out of confidential relationship, such as that of religious adviser and parishioner, and there are bequests to the one sustaining the confidential relation, and also active participation on his part in the preparation of the will, and acts of evasion on his part, these facts, coupled with singularity of provisions in the will and disinheritance of relatives, are indeed important circumstances to be considered in passing on the validity of the will, and may sustain an inference of undue influence. Some authorities state that, when such facts and circumstances appear, undue influence is presumed and the burden of proof is shifted to the proponent. * * * We think it an unfortunate use of terms to say that the burden of proof shifts. It is better to say the burden is on the contestant throughout but that facts such as we have detailed may make out a prima facie case, and, unopposed, may prevail."

We have discouraged suggestions to the jury of what presumptions or inferences of fact may be drawn or ought to be drawn from evidentiary facts, or to recognize the fact or effect olf the shifting of the burden of proof upon the introduction of particular evidence, or the making of a prima facie case by the production of certain proof, because tending to confuse or mislead a jury by strange terminology which courts often use loosely, and upon which they do not always agree. Occasionally such expressions are found in our cases but the tendency is against them.

We are constrained to hold that the trial court's instruction was too strongly against the will. The charge except for the portion discussed is an excellent presentation of the issues to the jury. Counsel called the attention of the court to the particular charge at the time. The findings of the jury are not subject to criticism. They are well sustained by the testimony. But we cannot hold that the portion of the charge discussed was harmless.

3. Error is claimed in permitting the calling olf Miss Boynton for cross-examination under the statute as an adverse witness. G. S. 1913, § 8377. Miss Boynton was in court with her counsel, actively supporting the 1916 will and actively opposing the 1911 will. She was named as executor in both, but she was not a mere nominal party as was the named executor in Bowler v. Fahey, 136 Minn. 408, 162 N. W. 515. She was a beneficiary in both, though more benefited by the second than the first, and was actively supporting the second. She was properly submitted to cross-examination under the statute as an adverse party. In re Brown, 38 Minn. 112, 35 N. W. 726.

Order reversed.