In the Matter of the ESTATE OF John P. PRIGGE, Deceased.

No. CX–83–1610.

Court of Appeals of Minnesota.

July 3, 1984.

Jerome W. Perry, Steward, Perry, Mahler & Bird, P.A., Rochester, for appellant.

Jerome A. Schreiber, Smith & Schreiber, Lake City, for respondent.

Heard, considered and decided by WOZNIAK, P.J., and HUSPENI and NIERENGARTEN, JJ.

## OPINION

NIERENGARTEN, Judge.

This appeal is taken by Louis Prigge and Jean Lechelt, brother and sister of decedent John Prigge, from an order of the trial court admitting John's will to probate. They claim the trial court erred in finding testamentary capacity at the time John executed his will, and in finding the will was not a product of fraud and undue influence. They also claim the trial court erroneously denied their request for a jury trial. We affirm.

## FACTS

Decedent John P. Prigge died on May 20, 1982, survived by two sisters, Marian Dohrn and Jean Lechelt, one brother, Louis Prigge, and some nephews and nieces. John never married and had been a farmer all his life. In 1971, he purchased the family farm from his uncle and his mother and in 1980, he sold it to the son and daughter-in-law of his sister, Marian. In July 1980, John moved in with Marian and her family. While living with them, Marian, at his request, prepared a hand-written document expressing his testamentary intent.

On March 18, 1981, John took the document to an attorney who prepared a last will and testament based on the contents of the document. John executed his will on approximately April 1, 1981. He devised his entire estate to his sister, Marian, and her six children, in equal shares. He specifically excluded Louis Prigge and Jean Lechelt.

Louis and Jean contested admission of the will to probate alleging John lacked testamentary capacity and that the will was the product of undue influence. The trial court heard the will contest without a jury.

## ISSUES

1. Whether John Prigge possessed testamentary capacity when he executed his will on April 1, 1981?

2. Whether the will of John Prigge was the product of undue influence?

3. Whether Louis and Jean had a right to a jury trial under Minn.Stat. § 524.1–306(a)?

## ANALYSIS

The scope of this court's review of findings made by a court sitting without a jury is set forth in Rule 52.01, Rules of Civil Procedure. The rule provides, in part:

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn.R.Civ.P. 52.01.

### I

### Testamentary Capacity

Contestants Louis and Jean initially contend that John did not possess the capacity to make a will, i.e., he did not understand the relationship of those who would naturally have claims on his bounty or the nature and extent of his property.

A testator will be found to have testamentary capacity if, when making the will, he understands

"the nature, situation, and extent of his property and the claims of others on his bounty or his remembrance, and he [is] able to hold these things in his mind long enough to form a rational judgment concerning them."

In re Estate of Congdon, 309 N.W.2d 261, 266 (Minn.1981) (quoting, In re Estate of Healy, 243 Minn. 383, 386, 68 N.W.2d 401, 403 (1955)). He need not have actual knowledge of his bounty. In re Estate of Jenks, 291 Minn. 138, 141, 189 N.W.2d 695, 697 (1971).

Less mental capacity is required to make a will than to conduct regular business affairs. Congdon, 309 N.W.2d at

267. The burden of proof is on the proponent of the will to show the testamentary capacity of the maker by prima facie evidence. *Jenks*, 291 Minn. at 143, 189 N.W.2d at 698.

What are the facts upon which the trial court determined John had sufficient testamentary capacity to make a will? It is undisputed that John was a man of average or below average intelligence who sometimes needed direction. His mother would have to balance his checkbook and take care of his bookwork. He had to be constantly reminded to do things around the house. He failed to do his tax returns in 1978 and 1979 and did not keep good track of his bills. Following the death of his mother and uncle, who helped him farm, the family operation declined in quality. These are the characteristics that Louis and Jean claim evidenced John's lack of testamentary capacity.

To rebut this, the attorney who drafted John's will testified that at the time John executed his will, he was of sound mind, had testamentary capacity, knew the natural heirs of his bounty, knew the extent of his property, and finally, that John was under no restraint when he made his will. The attorney also testified John did not appear to have any doubts as to what he wanted in his will and had no difficulty arriving at the decisions on the various questions asked of him.

There was additional testimony that John had, over the years, signed many documents, such as security agreements, mortgages and contracts, without anyone's aid. In September, 1980, John held an auction in which he sold most of his farming equipment. The sale required execution of an auction sale agreement with the Lake City Bank. The Vice-President of the bank testified he had no doubt that John had the ability to understand the agreement.

As evidence of his testamentary intent, a first cousin of John and the contestants testified that John mentioned to her he had made out a will and that "some of them aren't going to like it."

■ The evidence, both supporting and refuting John's testamentary capacity, consisted of oral testimony. When evidence supporting a trial court's findings as to any fact issue is entirely oral testimony, such finding may only be disturbed in the most unusual circumstances. *In re Trust Known as Great Northern Iron Ore Properties*, 308 Minn. 221, 243 N.W.2d 302, 305, *cert. denied*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976), *appeal after remand*, 263 N.W.2d 610 (Minn.), *cert. denied*, 439 U.S. 835, 99 S.Ct. 116, 58 L.Ed.2d 130 (1978); *Berry v. Goetz*, 348 N.W.2d 376 at 378 (Minn.Ct.App.1984).

■ The circumstances here are not so unusual as to allow us to disturb the trial court's findings of testamentary capacity.

## II

### *Undue Influence*

■ Louis and Jean also argue that decedent was unduly influenced and susceptible to suggestion. In order to show undue influence:

> "The evidence must go beyond suspicion and conjecture and show, not only that the influence was in fact exerted, but that it was so dominant and controlling of the testator's mind that, in making the will, he ceased to act of his own free volition and became a mere puppet of the wielder of that influence."

*In re Estate of Congdon*, 309 N.W.2d 261, 268 (Minn.1981), (quoting *In re Estate of Pundt*, 280 Minn. 102, 104–05, 157 N.W.2d 839, 841 (1968)).

> Among the factors important as bearing upon the fact of undue influence are the opportunity to exercise it, active participation in the preparation of the will by the party exercising it, a confidential relationship between the person making the will and the party exercising the influence, disinheritance of those whom the decedent probably would have remembered in his will, singularity of the provisions of the will, and the exercise of influence or persuasion to induce him to make the will in question.

*In re Estate of Wilson,* 223 Minn. 409, 413, 27 N.W.2d 429, 432 (1947).

Louis and Jean's undue influence claim centers around the handwritten will drafted by John's sister, Marian, while he lived with her. That act, in itself, creates a situation where close scrutiny of possible undue influence is required. It may even make a prima facie case.

> Where the beneficiary sustains confidential relations and drafts the will, or controls its drafting, it is variously stated, the phraseology and perhaps the precise thought changing from case to case, with some attendant confusion of expression and meaning, that a presumption of undue influence arises, or that an inference to that effect may be drawn as a fact, or that the facts stated make a prima facie case, or that the case is one for scrutiny.

*Boynton v. Simmons,* 156 Minn. 144, 149, 194 N.W. 330, 332 (1923), *appeal after remand,* 166 Minn. 65, 207 N.W. 189 (1926) (citations omitted). *See* T. Atkinson, *Handbook of The Law of Wills* § 55 at 261 (2d ed. 1953). *See also In re Estate of Keeley,* 167 Minn. 120, 121, 208 N.W. 535, 536 (1926).

John requested Marian to write down what he wanted in his will and to make sure the spelling of the names was correct. But it didn't end there. John then took the draft into an attorney's office where he received advice and assistance. As the attorney later testified, John knew what he wanted and what he was doing. There was no evidence of undue influence.

The relationship between John and his brothers and sisters negated undue influence. Whereas, Marian and her husband had helped John on many occasions for at least 8 years before he sold the family farm, John had an estranged relationship with Louis and Jean and had not associated with them except on a very limited basis.

The record supports a finding of no undue influence.

## III

### Jury Trial

Louis and Jean next argue that they were entitled to a trial by jury and that the trial court erred in denying a motion to impanel an advisory jury.

The Minnesota Uniform Probate Code provides, in part:

> (a) If duly demanded, a party is entitled to trial by jury in any proceeding in which any controverted question of fact arises as to which any party has a constitutional right to trial by jury.
>
> (b) If there is no right to trial by jury under subsection (a) or the right is waived, the court in its discretion may call a jury to decide any issue of fact, in which case the verdict is advisory only.

Minn.Stat. § 524.1–306 (1982).

The constitutional right to trial by jury had its birth in Article 1, section 4, of the Minnesota Constitution:

> The right of trial by jury shall remain inviolate, and shall extend to all cases at law without regard to the amount in controversy....

Minn. Const. art. I, § 4.

In *Rognrud v. Zubert,* 282 Minn. 430, 165 N.W.2d 244 (1969), the Minnesota Supreme Court interpreted Article 1, section 4, as guaranteeing the right to a jury trial as to those rights:

> which were conceived of as "legal," so that such a right existed with respect to them, at the time the Minnesota Constitution was adopted.

*Id.* at 433, 165 N.W.2d at 247 (citations omitted). *See also Congdon,* 309 N.W.2d 261 (Minn.1981). A proceeding to probate a will is in equity and therefore no right of trial by jury exists. *See Schmidt v. Schmidt,* 47 Minn. 451, 50 N.W. 598 (1891). Louis and Jean did not have a constitutional right to trial by jury.

## DECISION

The record supports the findings of the trial court that John Prigge possessed testamentary capacity at the time of the execution of the will, that he was not subject

to undue influence or suggestion, and that contestants had no right to a jury trial.

Affirmed.