**In the Matter of the ESTATE OF Sarah Janet MOULTON, a.k.a. Janet Benton Moulton, Deceased.**

**No. C1-84-1313.**

Court of Appeals of Minnesota.

April 2, 1985.

Edward J. Hance, Patrick J. O'Meara, Minneapolis, for appellant.

Stanley Efron, Bruce C. Recher, Minneapolis, for respondent.

Before Heard, considered and decided by SEDGWICK, P.J., and FOLEY and CRIPPEN, JJ.

### OPINION

CRIPPEN, Judge.

Appellant Dennis Benton petitioned the court for formal probate of Sarah Janet Moulton's 1983 will, which devised all of decedent's property to appellant. Respondents filed a petition objecting to the probate. After a trial before an advisory jury and the court, the jury found that the will was executed as a result of undue influence exercised upon decedent by appellant,

and the court issued an order denying probate of the will. This appeal is from that order and from an order by the court denying a motion for judgment notwithstanding the verdict or a new trial. We affirm.

## FACTS

Janet Moulton, decedent, was born on January 1, 1909. She underwent a mastectomy for breast cancer in 1979, the cancer spread in late 1982, and she died on September 29, 1983. Appellant Dennis Benton is decedent's nephew. Respondents are Frank Moulton, Jr., decedent's step-son, and Dr. John Benton, another nephew of decedent.

On May 4, 1975, decedent executed a will leaving her cash and securities to her brother and sister-in-law, and certain real estate to respondent John Benton. On March 19, 1979, she executed a new will leaving all of her property to respondent Frank Moulton, Jr. On May 4, 1983, decedent executed her third and final will, naming appellant as her sole devisee.

During her lifetime, decedent was very involved in politics and had an active social and family life. Until late 1982, she was physically active. Even throughout her illness, decedent was extremely interested in bridge.

In 1978, decedent entered into a partnership agreement with Richard Gilbert and respondent John Benton. She contributed her real property to the partnership; in return, she received proceeds which she used to purchase a townhouse in Minneapolis.

After 1979, decedent became more dependent upon appellant Dennis Benton in her financial affairs. She made many loans to him, beginning in 1979. These loans, which were for personal and business reasons, amounted to approximately $50,000. Few were paid back. In early 1982, decedent and appellant guaranteed a loan for a business in which appellant had a minority interest; a mortgage on decedent's home provided security for the loan. The business failed, and the bank attempted to foreclose on decedent's home. In May 1983, she sustained a $52,000 loss from paying the loan.

Decedent was hospitalized in January 1983, and began to use the drug Percocet to relieve the pain. Beginning in January, Dennis Benton and his wife Linda occasionally stayed with decedent at her home. Benton, who was self-employed at the time, moved his business to decedent's townhouse. Decedent and appellant discussed remodeling decedent's townhouse so that appellant and his wife could live with decedent.

In mid-April, decedent was again hospitalized for pain, nausea and faintness. Also in mid-April, appellant and his wife moved in with decedent, and spent much time caring for her.

In early or mid-April of 1983, appellant asked decedent to transfer her townhouse to him, so he could obtain a second mortgage to finance remodeling the house. He instructed an attorney to prepare a deed, and the attorney brought it to decedent's home on April 28, 1983. Decedent signed the deed, which did not reserve a life estate for her.

At the same meeting, decedent discussed changing her will. The attorney testified that decedent said she wanted everything to go to appellant. The attorney prepared a will the next day, and was scheduled to meet with decedent so that she could execute the will on April 30. On that day, however, she was hospitalized for excessive pain and weakened physical condition, and the meeting was postponed. Appellant rescheduled the meeting to May 4. On May 4, decedent was released from the hospital. She met with the attorney and two witnesses and executed the will. Appellant was not present when the will was executed, but he was present in the decedent's townhouse.

After being home for nine days, decedent was again hospitalized, and then released. She was further confined in the hospital from May 13 to May 23 for pain and possible excessive use of Percocet.

Prior to the execution of the May 4 will, on a number of occasions in 1983, decedent

said that she might change her 1979 will; she talked of bequests for various charities and relatives. Decedent also discussed giving money to these charities from proceeds from the projected sale of her partnership land.

On May 12, 1983, decedent met with several family friends and appellant to discuss financial and estate planning matters. At that time, decedent was so ill that she was only briefly able to participate in the discussion. During the course of the meeting, appellant disclosed that decedent's townhouse had been transferred to him and his wife outright. The family friends were shocked that no provision had been made for a life estate for decedent, and, with her consent, contacted an attorney to represent decedent.

Later in May, decedent's attorney met with decedent and learned that she could not recall transferring her townhouse to Dennis and Linda Benton. At that time, she stated to him that if she had done so, she shouldn't have. She also informed him that she could not remember the terms of the will.

After a series of meetings and conversations between the decedent's attorney and the attorney who arranged to convey the property, Dennis and Linda Benton reconveyed the townhouse to decedent in early June of 1983.

The trial court found that the May 4 will was obviously singular, and disinherits persons, including objectors, whom the decedent probably would have remembered in her will absent undue influence. It also found that Dennis Benton had the ability to persuade and improperly influence decedent to transfer her property to him for his benefit, indicated by the conveyance of the townhouse property from decedent to Benton, the business guarantee decedent executed, and the personal and business loans she made to Benton. These transactions, as well as comments made by appellant to others, also established his inclination and motive to obtain decedent's money and property by will or otherwise.

The court was skeptical, as the jury obviously had been, toward the testimony of Dennis Benton about his dealings with decedent. This was because of Benton's many misstatements concerning his financial relationship with decedent, his apparent effort to conceal this relationship, his demeanor, and the many contradictions brought about through his testimony and the testimony of more credible and disinterested witnesses.

Because of Benton's ability to improperly influence decedent to achieve his objectives, and his discussions with decedent, and the instructions provided to the attorney at the April 28 meeting about decedent's will, the court found appellant participated in the making of the May 4, 1983, will, and improperly influenced decedent to make the will and name him as a beneficiary.

The court further found that appellant substituted his desires for decedent's through the exercise of improper and undue influence, which operated, dominated and controlled the execution of the will of May 4. The court, in accordance with the finding of the advisory jury, found that the May 4, 1983, will was the result of undue influence exercised by Dennis Benton upon the decedent.

## ISSUE

Did the trial court clearly err in its finding that decedent's will was executed as a result of undue influence exercised upon her by appellant?

## ANALYSIS

■ The court was given an advisory opinion by a six member jury pursuant to Minn.Stat. § 524.1–306(b) (1984). The statute provides that

> the court in its discretion may call a jury to decide any issue of fact, in which case the jury is advisory only.

The trial court is not bound by the jury's determinations, and must elect whether to make them findings of its own. *In re Estate of Murphy*, 269 Minn. 393, 404–06, 131 N.W.2d 220, 227–28 (1964).

The scope of review of findings by a court sitting without a jury, or with an

advisory jury, is governed by Rule 52.01 of the Minnesota Rules of Civil Procedure:

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses.

The supreme court has stated that the rule clearly establishes a broader scope of appellate review than that applied when the court is reviewing findings of a jury or of an administrative tribunal. * * * Indeed, the scope of review under this rule may now be regarded as the broadest exercised by an appellate court for, even though there is evidence to support a finding, the finding can be held to be clearly erroneous if "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."

*In re Estate of Balafas,* 293 Minn. 94, 96, 198 N.W.2d 260, 261 (1972), *quoting United States v. Oregon State Medical Society,* 343 U.S. 326, 339, 72 S.Ct. 690, 698, 96 L.Ed. 978 (1952).

Minn.Stat. § 524.3–407 (1984) provides that the contestants of a will have the burden of establishing undue influence. Several cases have discussed the kind of evidence which must be present to support a finding of undue influence:

The evidence must go beyond suspicion and conjecture and show, not only that the influence was in fact exerted, but that it was so dominant and controlling of the testator's mind that, in making the will, he ceased to act of his own free volition and became a mere puppet of the wielder of that influence.

*In re Estate of Reay,* 249 Minn. 123, 126–27, 81 N.W.2d 277, 280 (1957), *quoted in In re Estate of Congdon,* 309 N.W.2d 261, 268 (Minn.1981); *In re Estate of Olsen,* 357 N.W.2d 407, 411 (Minn.Ct.App.1984), *pet. for rev. denied,* (Minn. May 30, 1984).

■ There are also factors identified which are to be examined in determining whether undue influence was present:

Among the factors important as bearing upon the fact of undue influence are the opportunity to exercise it, active participation in the preparation of the will by the party exercising it, a confidential relationship between the person making the will and the party exercising the influence, disinheritance of those whom the decedent probably would have remembered in his will, singularity of the provisions of the will, and the exercise of influence or persuasion to induce him to make the will in question.

*In re Estate of Wilson,* 223 Minn. 409, 413, 27 N.W.2d 429, 432 (1947), *quoted in In re Estate of Prigge,* 352 N.W.2d 443, 445–46 (Minn.Ct.App.1984).

■ Upon a review of the evidence, we do not believe that the trial court made a mistake. It properly considered the factors listed in *Wilson,* and was not clearly erroneous in finding, based on those factors, that appellant exerted undue influence upon decedent in inducing her to make the will in question.

### DECISION

The trial court did not err in finding that the will was executed as a result of undue influence exercised upon decedent by appellant, and denying probate of the will.

Affirmed.