**In re ESTATE OF Mary P. NOVOTNY, Deceased.**

**No. CX–85–1692.**

Court of Appeals of Minnesota.

April 22, 1986.

Harry Christian, Le Center, for George Novotny.

Loren M. Barta, New Prague, for Adeline Pecholt.

Heard, considered, and decided by WOZNIAK, P.J., and HUSPENI and RANDALL, JJ.

## OPINION

WOZNIAK, Judge.

Appellant Adeline Pecholt objected to admission of her mother's will into probate, alleging that her mother lacked testamentary capacity, had been unduly influenced, and had made a mistake of fact about the extent of her estate. After a trial by the court, the probate court rejected appellant's objections and admitted the will to probate. Appellant further claims the trial court erred in imposing a high burden of proof upon appellant, the contestant of the will, to show undue influence. Appellant did not raise the issue of mistake on appeal. We affirm.

## FACTS

Decedent Mary P. Novotny, 84, died on December 11, 1984, and was survived by two of her children, appellant George Novotny and respondent Adeline Pecholt in this appeal. Her third child, Edward Novotny, took his own life only three weeks prior to the execution of the will in question.

Decedent, a farm woman of Czech descent, was born in Minnesota and had lived on the Novotny farm for most of her life until she moved to a nursing home in 1980. She had a limited education, completing only the fourth grade of school. There was conflicting testimony as to the extent of her fluency in the English language. The family doctor and the nursing assistant testified that she was able to communicate effectively in the English language. However, Adeline and her husband testified that decedent could speak only a few English words. Jacqueline Henley, the nursing home administrator, testified that there were only twenty English words in decedent's vocabulary.

After her move to the nursing home, decedent's son Edward assisted her with her financial and business affairs until his death on December 14, 1983. This event caused emotional upset in Mary's life; she cried often and constantly complained about the suicide.

Edward died intestate and without a wife or children. His estate, consisting of real estate, personal property, and cash of substantial value, passed by law to decedent. Before this time, she possessed very little cash or assets of any kind, and was receiving medical assistance. Because of this, the state has a medical assistance lien on Mary's estate in the amount of $93,000.

Shortly after Edward's death, George retained attorney Eugene Wann to commence the probate proceedings for Edward's estate and to draft a will for decedent. George told Wann how to draft the will according to decedent's wishes. She wanted the Novotny family farm to go to George and the residue of her estate to her daughter, Adeline Pecholt. Wann drafted the will in this manner and she executed it on January 6, 1984.

The family doctor and Wann witnessed the execution of the will. They testified that decedent was very competent and that she knew the extent of her estate. They discussed with her the general nature of her property and the fact that there was a substantial medical assistance lien that would be satisfied out of the residuary clause of the will.

Respondent filed a petition for formal probate of the will and appellant filed a petition objecting to the will, based on undue influence and lack of testamentary capacity. The probate court ordered the will

admitted to probate and this appeal followed.

## ISSUES

1. Did the trial court err in imposing the burden of proof and persuasion upon appellant to establish undue influence?

2. Is the trial court's conclusion that decedent's will was not the product of undue influence clearly erroneous?

3. Is the trial court's conclusion that decedent had testamentary capacity when she executed her will clearly erroneous?

## ANALYSIS

On appeal from a probate court's decision, after a trial without a jury, our scope of review is a narrow one:

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses.

Minn.R.Civ.P. 52.01. This court may deem a trial court's finding clearly erroneous only if, after review of the entire evidence, we are "left with the definite and firm conviction that a mistake has been committed." *In re Estate of Anderson,* 379 N.W.2d 197, 200 (Minn.Ct.App.1985).

### 1. *Burdens of Proof and Persuasion.*

Appellant contends that the trial court erred by imposing a high burden of proof upon appellant to prove undue influence, and that the court erred in failing to find a presumption of undue influence.

Where the beneficiary sustains confidential relations and drafts the will, or controls its drafting, it is variously stated, the phraseology and perhaps the precise thought changing from case to case, with some attendant confusion of expression and meaning, that a presumption of undue influence arises, or that an inference to that effect may be drawn as a fact, or that the facts stated make a prima facie case, or that the case is one for scrutiny.

*In re Estate of Prigge,* 352 N.W.2d 443, 446 (Minn.Ct.App.1984) (quoting *Boynton*

*v. Simmons,* 156 Minn. 144, 149, 194 N.W. 330, 332 (1923)).

■ However, the burdens of proof and persuasion in contested will cases are set forth in Minn.Stat. § 524.3–407 (1984):

In contested cases, petitioners who seek to establish intestacy have the burden of establishing prima facie proof of death, venue and heirship. Proponents of a will have the burden of establishing prima facie proof of due execution in all cases, and, if they are also petitioners, prima facie proof of death and venue. Contestants of a will have the burden of establishing lack of testamentary intent or capacity, undue influence, fraud, duress, mistake or revocation. *Parties have the ultimate burden of persuasion as to matters with respect to which they have the initial burden of proof.*

*Id.* (emphasis added). Respondent then has the burden of merely making a prima facie showing that decedent's will was properly executed. Appellant has both the burden of proof and the ultimate burden of persuasion that undue influence existed. In *Anderson,* this court characterized the will contestant's burden as a "heavy burden of proof." 379 N.W.2d at 200.

■ Appellant's characterization of her burden of proof in establishing undue influence is incorrect; a mere presumption does not meet the requirements of her heavy burden of proof. The trial court properly imposed the burden of persuasion upon appellant.

### 2. *Undue Influence.*

Appellant argues that respondent unduly influenced decedent. In order to show undue influence:

[t]he evidence must go beyond suspicion and conjecture and show, not only that the influence was in fact exerted, but that it was so dominant and controlling of the testator's mind that, in making the will, he ceased to act of his own free volition and became a mere puppet of the wielder of that influence. * * * Among the factors important as bearing upon the fact of undue influence are the op-

portunity to exercise it, active participation in the preparation of the will by the party exercising it, a confidential relationship between the person making the will and the party exercising the influence, disinheritance of those whom the decedent probably would have remembered in his will, singularity of the provisions of the will, and the exercise of influence or persuasion to induce him to make the will in question.

*Anderson*, 379 N.W.2d at 200 (citations omitted).

■ The trial judge found that "it may be that there existed an opportunity to exert undue influence." Indeed, the record shows that respondent took an active part in the preparation of the will and that he took care of decedent's business matters. Further, because of a medical assistance lien that the county would assert against the estate, the will in effect disinherited decedent's daughter. However, opportunity alone will not sustain a finding of undue influence. *Id.* at 200.

There are several factors showing that respondent did not unduly influence decedent. First, respondent was not present at the execution of the will, and decedent acknowledged that the will reflected her wishes and that she wanted the family farm to go to her son. An attorney had explained that the medical assistance lien would reduce Adeline's inheritance, but it would have been impossible for decedent to know the exact effect the medical assistance lien would have, for the amount of the lien increased daily until her death.

Additionally, decedent had always been preferential to the males in the family. She and her husband did not permit Adeline to attend high school, and had never given Adeline a substantial gift. On the other hand, they had given George a farm and a new car for a wedding gift.

We hold that the trial court's conclusion that respondent did not unduly influence decedent was not clearly erroneous.

3. *Testamentary Capacity.*

■ Appellant contends that decedent lacked testamentary capacity when she executed her will.

A testator will be found to have testamentary capacity if, when making the will, he understands "the nature, situation, and extent of his property and the claims of others on his bounty or his remembrance, and he [is] able to hold these things in his mind long enough to form a rational judgment concerning them."

*Prigge*, 352 N.W.2d at 444 (quoting *In re Estate of Congdon*, 309 N.W.2d 261, 266 (Minn.1981)). Testamentary capacity is established when it is shown that the testator possessed the "capacity to know and understand the nature and extent of his bounty, as distinguished from the requirement that he have actual knowledge thereof." *In re Estate of Jenks*, 291 Minn. 138, 141, 189 N.W.2d 695, 697 (1971).

Decedent had no actual knowledge of the extent of her property; she was aware of the outstanding medical assistance lien, but it would have been impossible for her to know the exact effect the lien would have, for the amount of the lien increased daily until her death. However, decedent was in good mental and physical condition at the time she executed her will. She had sufficient intelligence and understanding to have the *capacity* to know and understand the nature and extent of her bounty. Further, it is clear that she wanted the family farm to go to her son. The trial court's finding of testamentary capacity was not clearly erroneous.

### DECISION

Appellant's burden of establishing undue influence is not met merely by relying on a presumption of undue influence.

The trial court's conclusions that decedent's will was not a product of undue influence and that decedent possessed testamentary capacity when she executed her will are not clearly erroneous.

Affirmed.