In re ESTATE OF Mary Lou R. SCHROEDER, a.k.a. Mary Lou Reader, a.k.a. Mary Lou Reader Schroeder, Deceased.

No. CX–88–2436.

Court of Appeals of Minnesota.

June 13, 1989.

Review Denied Aug. 15, 1989.

Jerome A. Ritter, St. Paul, for respondent, Thomas J. Reader as nominated co-personal representative.

Albert D. Levin, St. Paul, for Thomas J. Reader, individually.

Kenneth J. Rohleder, Michael J. Pitton, St. Paul, for respondent, Joanna Randall Runnels.

Hubert H. Humphrey, III, Atty. Gen., Karyn I. Greene, Asst. Atty. Gen., St. Paul.

Kenneth Wolfe, Williamsburg, Va., pro se.

Martin H. Fisk, Briggs and Morgan, St. Paul, for appellant, First Bank Nat. Ass'n.

Heard, considered, and decided by WOZNIAK, C.J., and PARKER and KALITOWSKI, JJ.

## OPINION

WOZNIAK, Chief Judge.

The trial court approved a will settlement agreement and denied probate. Appellant contends the trial court erred in approving the agreement because the will contest was not in good faith and the settlement agreement was not just and reasonable. We agree and reverse.

### FACTS

Mary Lou R. Schroeder died in July 1987. She was survived by Leslie Schroeder, 85 years of age, her second husband of 26 years, and by two children from her first marriage, Thomas Reader and Joanna Runnels.

The decedent validly executed her will in June 1978. Leslie Schroeder, a practicing attorney, drafted the will, which was kept for safekeeping at First Bank National Association ("First Bank") as had been her practice with previous wills. As part of routine business practice, First Bank reminded customers to review their wills. In April 1981, First Bank sent a reminder to the decedent. Leslie Schroeder responded, indicating decedent's estate plan was unchanged and her will was being reviewed. In March 1984, First Bank sent a second reminder to the decedent. This letter was returned with the notation "Will still OK as of 3/10/84" and was signed "Mary Lou R. Schroeder."

In her will, the decedent devised her automobiles to Leslie Schroeder, if he survived her. Her homestead and tangible personal property were devised equally to Reader and Runnels. Decedent's residuary estate was devised in three equal parts. Reader was to receive his one-third share free of trust. Runnels and Leslie Schroeder each were to receive one-third in a spendthrift trust providing income only for their lifetime. The will specifically provides that the trustees are not authorized to invade the principal of the trusts for the benefit of Mr. Schroeder or Runnels. When Runnels died, the remainder of her trust was to pass to her issue, or, if none, to Reader and his issue. When Leslie Schroeder died, the remainder of his trust was to pass equally to Runnels in trust and Reader free of trust. Under certain contingencies, the remainder in the two trusts could pass to the Colonial Williamsburg Foundation in Williamsburg, Virginia. Reader and First Bank are nominated as co-personal representatives and co-trustees in the will. The total value of decedent's estate exceeded $400,000.

Reader initially petitioned for probate of the will and appointment of himself as sole personal representative. First Bank, although nominated as a co-personal representative and a co-trustee, was not named as an interested party in the petition and was not given notice of this proceeding. Runnels and Schroeder objected to probate on identical grounds:

> there had been a completed revocation of said will by the decedent prior to her death; and on the further grounds of mistake.

Reader, Runnels, and Schroeder entered into a settlement agreement. The trial court approved this settlement and entered an order of formal probate of settlement agreement and formal appointment of executor.

First Bank received notice of filing of this order which was its first notice of any

probate proceedings in this matter. It moved to vacate the order. After notice and hearing, the trial court vacated its order.

First Bank subsequently petitioned for formal probate of the will and for appointment of itself and Reader as co-personal representatives. Runnels and Schroeder once again objected on the identical grounds of mistake and revocation. Reader, Runnels, and Schroeder entered into another settlement agreement similar to the one submitted earlier to the court. A hearing date was set, but Schroeder died prior to the hearing.

Runnels and Reader executed a new settlement agreement shortly after Schroeder's death. This settlement agreement differs significantly from the distribution under the will. Runnels would receive her share of the estate free of trust rather than in trust. Runnels, however, would have to place these funds in a "separate and identifiable account" to be used only for "reasonable living expenses." Reader could review any spending from this account, and neither Runnels nor her creditors could invade the principal. Runnels is required to will the account balance to Reader. Under the settlement agreement, Reader would be appointed sole personal representative. The Colonial Williamsburg Foundation also would be paid $10,000 to release its remainder interest.

At trial, respondents' evidence of revocation consisted of miscellaneous testimony to the effect that the decedent had wanted to make changes in her will and had communicated something to Schroeder, her husband and lawyer, about this. A new will was neither drafted nor executed because Schroeder neglected to do it, refused to do it, did not feel it was necessary, or was afraid of being eliminated as a beneficiary in a new will. The record also reveals that the decedent knew she had to write a new will to change her prior will and that, at one point, she decided to get a different lawyer or draft a new will herself. Respondents contended that a "moral revocation" had occurred.

Evidence of mistake consisted of testimony that decedent wanted the contingent remainder beneficiary to be the College of William and Mary rather than the Colonial Williamsburg Foundation. Decedent, however, knew that the Colonial Williamsburg Foundation had been included as a beneficiary under her will.

The trial court found that a good faith will contest existed and that the settlement agreement was just and reasonable. In October 1988, the trial court issued an order approving the settlement agreement. The trial court, on its own motion, amended this order on November 21, 1988. The court denied admission to probate of the decedent's will and declined to appoint Reader and First Bank as co-personal representatives, even though they were nominated in the will. In lieu of admitting the will to probate, the court approved the settlement agreement and appointed Reader as the sole personal representative. First Bank appealed from this amended order.

## ISSUES

1. May First Bank, a nominated co-personal representative and co-trustee, appeal from an order denying probate and approving a settlement agreement?

2. Did the trial court err in finding that a good faith contest existed and that the settlement agreement was just and reasonable?

3. Did the trial court err in not appointing First Bank as a personal representative even though it was nominated in the will?

4. Did the trial court err in not appointing a guardian ad litem to represent the interest of the unborn issue?

## ANALYSIS

1. (a) The respondents raise the preliminary procedural issue that First Bank cannot appeal from the amended order because it requested the amendment. This argument is frivolous. First Bank's request for an amended order only asked the court to explicitly deny a petition which it had already implicitly denied. It is clear that the trial court amended the order on

its own motion instead of on a party's motion.

(b) In addition, the respondents argue that First Bank possesses no right to appeal since it is not an "aggrieved person." This argument has no merit. The trial court's amended order denied First Bank's probate petition and approved respondents' settlement agreement. Any person aggrieved by an order denying probate may appeal. Minn.Stat. § 525.712 (1988). Nominated executors may appeal a denial of a probate petition. *Burmeister v. Gust*, 117 Minn. 247, 135 N.W. 980 (1912). Executors are personal representatives. Minn.Stat. § 524.1–201(30) (1988). *See In Re Estate of Rowe*, 262 Minn. 13, 113 N.W. 2d 352 (1962). First Bank thus is an aggrieved party as a nominated personal representative.

(c) Respondents also contend that First Bank cannot appeal because it is not an aggrieved party since it does not have a beneficial interest in the estate. This argument is also meritless. A financial stake in the litigation is not necessary in order to be an aggrieved party. *In Re Estate of Overton*, 417 N.W.2d 653, 655–56 (Minn.Ct.App. 1988).

(d) Respondents further maintain First Bank cannot appeal under our reasoning in *In Re Estate of Truhn*, 394 N.W.2d 864 (Minn.Ct.App.1986). In *Truhn*, the decedent had two sets of minor children. A testamentary trust was established for each set of children, with equal principal in each trust. A stipulated agreement apportioned 55% of the total principal to the younger set of children and 45% of the total principal to the older set of children. Appellant, a trustee, tried to challenge the stipulated agreement because one child who had become 18 years old had failed to sign the agreement. This court held that the trustee could not challenge the stipulated agreement. *Id.* at 867.

This case is distinguishable from *Truhn*. First Bank was *both* a nominated co-trustee and a nominated co-personal representative. A personal representative

> is under a duty to see that the assets constituting the testator's estate are not

diverted from the course prescribed by the testator.

*In Re Healy's Estate*, 247 Minn. 205, 209, 76 N.W.2d 677, 680 (1956); Minn.Stat. § 524.3–703(a) (1988). If a nominated personal representative cannot appeal, no one remains who can challenge a settlement agreement which aids the beneficiaries, yet emasculates the testator's intent. To hold otherwise would mean that nominated executors and testamentary trustees do not have standing to challenge orders which are in derogation of their fiduciary responsibilities.

2. Minnesota has codified a procedure for securing court approval of will settlement agreements. Minn.Stat. § 524.3–1102 (1988). Section 524.3–1102(3) provides that a court must approve a settlement agreement if (1) the will contest or controversy is in good faith, and (2) the effect of the agreement upon the interests of the parties represented by fiduciaries is just and reasonable. Both parts of this two-part test must be satisfied to approve a settlement agreement.

The trial court concluded that a good faith contest existed and that the settlement agreement was just and reasonable. These determinations were not based on the trial court's findings on disputed facts. Instead, the trial court applied the facts presented in reaching these conclusions. The trial court's determinations are thus legal conclusions which are not binding on this court. *A.J. Chromy Construction Co. v. Commercial Mechanical Services, Inc.*, 260 N.W.2d 579, 582 (Minn.1979); *In Re Holden's Trust*, 207 Minn. 211, 291 N.W. 104 (1940).

All of the evidence concerning objections to the will were presented at the hearing held in September 1988. The trial court did not have to make a finding as to whether the controversy was in good faith, but was in a position to decide the controversy. The will settlement agreement statute is intended to prevent dissipation of the estate in wasteful litigation. Comment, Uniform Probate Code, 8 U.L.A. § 3–1102 (1983). Since the litigation here had already occurred, the trial court could have

determined the validity of the objections to the will.

*Good Faith*

The decedent was a competent testatrix who executed her will with all the requisite formalities. Her will is thorough and professional. The decedent was reminded on at least two occasions to review her will. After the more recent reminder in March 1984, the decedent indicated her will was "still o.k."

Respondents nevertheless objected to the probate of decedent's will on the grounds of revocation, mistake, and undue influence. To constitute a good faith will contest, such objections must have legal merit. The trial court determined that a good faith will contest existed, but did not specify which legal theory supported this conclusion. We must therefore address the merits of each of respondents' legal theories.

(a) *Revocation*

■ Respondents filed a written objection to decedent's will based on revocation. A will can be revoked only:

(1) by a subsequent will which revokes the prior will or part expressly or by inconsistency, or

(2) by being burned, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking it by the testator or by another person in his presence and by his direction.

Minn.Stat. § 524.2–507 (1988). The decedent did not execute a will subsequent to her 1978 will. Moreover, there was no evidence that her will was physically altered in any way. Respondents hence clearly did not establish either statutory basis for revocation.

Respondents' evidence of revocation consisted merely of dubious hearsay testimony that decedent wanted to change her will, but Leslie Schroeder did not change it. Such oral declarations cannot revoke a will:

The requirements prescribed by statute for the revocation of a will preclude a mere parol revocation, and the general rule is that declarations of a testator, subsequent to the making of his will, tending to show a revocation thereof are not competent as evidence on the issue of revocation, in the absence of other evidence of a revocation. Otherwise stated, declarations of the testator which were not made in connection with some act of revocation, and which are not part of the res gestae, are inadmissible as proof of the facts asserted on the issue of revocation of a will.

79 Am.Jur.2d *Wills* § 621 (1975). Moreover, even if oral declarations could revoke a will, the testimony offered indicates at best an inchoate intent to revoke. These statements thus cannot create a good faith contest on the grounds of revocation.

Runnels's counsel contended that the evidence would demonstrate a "moral revocation" by the decedent. This is a novel legal argument. We decline to introduce such a concept into our law because it would lead to a proliferation of litigation over wills and estates.

The respondents presented no evidence which demonstrated that the statutory grounds for revocation had been satisfied. The alleged oral declarations by the decedent of her intent to revoke are simply irrelevant. The respondents' objection based on revocation is meritless.

(b) *Mistake*

■ Respondents' second written ground for objection to decedent's will was mistake. The only evidence introduced at trial tending to show mistake was hearsay testimony that the decedent mistakenly named the Colonial Williamsburg Foundation as a beneficiary instead of the College of William and Mary. In support of this argument, the respondents rely solely on dubious statements purportedly made by the decedent and Leslie Schroeder.

The general rule is that parol evidence is not admissible to add to, vary, or contradict the words of a written will, for the will itself is the best evidence of a testator's intention, and it is required to be in writing.

*In Re Henrikson's Estate,* 163 Minn. 176, 179, 203 N.W. 778, 779 (1925). Parol evidence may be considered to remove patent or latent ambiguity as to the devisee. *Id.* Since, however, the will unambiguously

names the Colonial Williamsburg Foundation as a beneficiary, it is inappropriate to consider parol evidence of decedent's intent. Even if the testimony is true, the most it would support would be a reformation of the instrument to change such contingent remainder beneficiary. It certainly cannot warrant overthrowing the decedent's entire testamentary plan. The respondents' objection based on mistake is also meritless.

### (c) *Undue Influence*

■ Undue influence was not included among the written objections to the will filed with the trial court, but respondents' counsel adverted to it at trial. To prove undue influence, it must be demonstrated that a testator "ceased to act of his own free volition and became a mere puppet of the wielder of that influence." *In Re Estate of Prigge*, 352 N.W.2d 443, 445 (Minn. Ct.App.1984) (citations omitted). Factors which indicate if undue influence was present include:

(1) The opportunity to exercise influence;

(2) Active participation in the preparation of the will;

(3) A confidential relationship;

(4) Disinheritance of those whom the decedent probably would have remembered in his will;

(5) Singularity of the will provisions; and

(6) Exercise of influence to induce the making of the will.

*Id.* at 445–46.

■ Leslie Schroeder had an opportunity to exercise undue influence because he was the decedent's husband, her attorney, and he drafted her will. However, there is no indication that Leslie Schroeder's influence made decedent a mere puppet at any time. The decedent considered retaining a new lawyer, contemplated drafting a new will herself, and considered divorcing Leslie Schroeder. Moreover, despite a 26–year marriage, Leslie Schroeder, an octogenarian, was to receive only a 1976 Olds Delta 88 and income during his lifetime from a spendthrift trust. The decedent's independence, coupled with the very limited and modest devise to Leslie Schroeder, clearly demonstrates no undue influence was exercised.

The decedent's will is unquestionably valid. Because respondents' objections are meritless, the will should have been admitted to probate. To deny probate on such frivolous grounds threatens the fundamental principle that wills executed with the requisite formalities will be admitted to probate. The will settlement agreement statute was not intended to allow circumvention of this principle:

> [T]he procedure does not threaten the planning of a testator who plans and drafts with sufficient clarity and completeness to eliminate the possibility of good faith controversy concerning the meaning and legality of his plan.

Comment, Uniform Probate Code, 8 U.L.A. § 3–1102 (1983). We will not undermine this principle by allowing a valid will to be set aside based on meritless objections. We therefore hold that the trial court erred in approving a settlement agreement in the absence of a good faith will contest.

### *Just and Reasonable Settlement*

The second part of the test for a will settlement agreement is if "the effect of the agreement upon the interests of persons represented by fiduciaries or other representatives is just and reasonable." Minn.Stat. § 524.3–1102(3) (1988). This part of the test is not reached unless there is a determination that the contest or controversy is in good faith. Although we hold that no good faith contest existed here, we nevertheless choose to address the "just and reasonable" requirement.

The will provided Runnels would receive her share of the residuary estate in a spendthrift trust with Reader and First Bank as co-trustees. The estate plan in the settlement agreement provided Runnels would receive her share free of trust. The funds, however, are subject to a number of restrictions. They must be deposited in a separate and identifiable account to be used for "reasonable living expenses." Reader is entitled to review any expenditures made from this account. Runnels is

required to will the account balance to Reader. The trial court determined that this plan was just and reasonable.

■ Neither the statute nor the Uniform Probate Code Comment provides a standard for determining if a plan is just and reasonable. Professor Austin Scott, however, has set forth criteria to be used in evaluating estate plans in settlement agreements:

A similar question arises where the will provides for the creation of a trust under which, either by statute or by the terms of the will, the interests of some of the beneficiaries are inalienable, in other words where the intended trust is a spendthrift trust. There can be no doubt that the court may under proper circumstances approve a compromise agreement in order to protect the interests of the beneficiaries. The only question is under what circumstances a compromise agreement will be approved by the court and what sort of compromise agreement will be approved.

Where the will provides for the creation of a spendthrift trust, *the beneficiaries cannot insist on receiving the property or a part of it free of trust, or insist on the creation of a trust under which their interests are alienable, or otherwise vary the terms of a trust under the guise of a compromise agreement merely because they wish to do so. The agreement must be submitted to the court for its approval, and the court will approve the agreement only if it is reasonably necessary for the protection of the interests of the beneficiaries.*

Fratcher, *IV Scott on Trusts* § 337.6 (4th ed.1989) (emphasis added) (citations omitted); *see also Altemeier v. Harris*, 403 Ill. 345, 86 N.E.2d 229 (1949); *Rose v. Southern Michigan National Bank*, 255 Mich. 275, 238 N.W. 284 (1931). We find Professor Scott's reasoning persuasive. We therefore conclude that to be just and reasonable, an estate plan in a settlement agreement must defer to the testator's intent unless a departure from that intent is reasonably necessary to protect the interests of the beneficiaries.

The above standard is consistent with the settlement agreement statutory scheme. An estate plan in a settlement agreement may affect a trust. Minn.Stat. § 524.3–1101 (1988). However, an estate plan which differs from the testator's intent can be approved only in limited circumstances:

The only reason for approving a scheme of devolution which differs from that named by the testator or the statutes governing intestacy is to prevent dissipation of the estate in wasteful litigation.

Comment, Uniform Probate Code, 8 U.L.A. § 3–1102 (1983). The statutory scheme thus also implies that an estate plan must defer to the testator's intent unless a departure is reasonably necessary to protect the interests of the beneficiaries.

■ There was no evidence that elimination of the spendthrift trust was necessary to protect the interests of respondents. The spendthrift trust instead was eliminated because the respondents did not like the testator's restrictions, including First Bank's role as a co-trustee. The decedent knew her daughter and created a spendthrift trust to provide her with a stable and reliable income. We will not give our imprimatur to an estate plan which so flagrantly violates a testator's intent. *In Re Boright*, 359 N.W.2d 647, 651 (Minn.Ct. App.1984), *aff'd in part and rev'd in part*, 377 N.W.2d 9 (Minn.1985). We therefore hold that the estate plan in the settlement agreement was not just and reasonable.

The settlement agreement in addition creates an odd and unworkable distribution to Runnels. Runnels is to receive her share outright, yet her share is subject to various restrictions. The resulting property interest resembles a self-trusted irrevocable trust, but the legal effects of such an arrangement are quite uncertain. There are, for example, no adequate standards with which to judge distributions from the account. Also, there are significantly fewer restrictions on this account than on the decedent's intended spendthrift trust. These considerations further support our conclusion that this settlement agreement was not just and reasonable.

The decedent clearly expressed her intent in a will executed in accordance with the requisite formalities. The respondents brought a frivolous will contest simply to eliminate restrictions imposed by the decedent. This was a "mere moot case trumped up for the purpose of getting collusive destruction of the trust." Bogert, *Trusts* § 152 (6th ed.1987). To approve such a settlement agreement threatens to unravel two fundamental principles of probate law: (1) the paramount importance of carrying out the intention of the testator, and (2) the requirement that a testator express his intention with the requisite formalities. We cannot approve such a settlement agreement.

3. First Bank and Reader were both nominated as personal representatives in the will. The trial court, however, named Reader as sole personal representative as provided in the settlement agreement. We reject this settlement agreement, including the provision naming Reader as the only personal representative. When the will is admitted to probate, both Reader and First Bank will have priority because they were nominated in the will. Minn.Stat. § 524.3–203(a)(1) (1988). *See Estate of Crosby*, 218 Minn. 149, 15 N.W.2d 501 (1944).

4. The unborn issue of Reader and Runnels had remainder interests in the testamentary trusts. The settlement agreement eliminated their remainder interests. First Bank contends the trial court erred in not appointing a guardian ad litem to represent the unborn issue. We recognize that a trial court has discretion in deciding whether to appoint a guardian ad litem to represent unborn issue. Minn.Stat. § 524.1–403(4) (1988). However, because we reject the settlement agreement on other grounds, it is unnecessary to consider if the trial court abused its discretion in failing to appoint a guardian ad litem.

## DECISION

The trial court erred in approving a will settlement agreement where the objections to the will are meritless and the settlement agreement eliminates a spendthrift trust.

We therefore direct that decedent's will be admitted to probate and the co-personal representatives nominated therein be appointed.

Reversed.