**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A15-1383**

In re the Matter of the Estate of:
Brian K. Johnson, Decedent.

**Filed April 25, 2016**
**Affirmed**
**Randall, Judge**[*]

Hennepin County District Court
File No. 27-PA-PR-14-943

Justin N. Brunner, Brett M. Larson, Messerli & Kramer, P.A., Minneapolis, Minnesota (for appellant Jason Johnson)

Adam S. Huhta, Huhta Law Firm, PLLC, Minneapolis, Minnesota (for respondents Debra Johnson Wright and Jenny Makousky)

Mark R. Bradford, Robin Ann Williams, Bassford Remele P.A., Minneapolis, Minnesota (for respondent successor Alan I. Silver)

Jess Faught, Maple Plain, Minnesota (pro se respondent)

Tiffany Johnson, Blaine, Minnesota (pro se respondent)

Sean Johnson, Annandale, Minnesota (pro se respondent)

Considered and decided by Reyes, Presiding Judge; Ross, Judge; and Randall, Judge.

_____

[*] Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

When an estate is administered by a court-appointed personal representative, Minnesota Statutes section 524.3-813 (2014) authorizes the personal representative to compromise claims against the estate without the consent of all beneficiaries under the will.

## O P I N I O N

**RANDALL**, Judge

Appellant Jason Johnson challenges the district court's approval of a settlement agreement affecting his interest in stock bequeathed to him under his father's will. The proposed settlement resolved a shareholder dispute regarding the ownership of that stock. Jason Johnson argues that the settlement could not be approved over his objection because the personal representative did not obtain his written consent under Minnesota Statutes section 524.3-1102 (2014). Section 524.3-1102 does not control here. The personal representative had the authority under Minnesota Statutes section 524.3-813 to compromise claims against the estate without unanimous beneficiary consent. We affirm.

## FACTS

Brian Johnson died testate in September 2013. He was the founder and, initially, the sole owner of Datum-A-Industries, Inc. (Datum-A). In his will he bequeathed half his interest in the company to his son, Jason Johnson, with the remaining half split between his step-children, Jess Faught and Jenny Faught (Jenny Makousky). The corporation's by-laws, however, restrict the estate from immediately distributing Jason Johnson's interest. Rather, the estate must first offer to sell any shares back to the company and its

2

shareholders. Only after this first-refusal right is rejected may the shares be transferred in any other manner.

Further encumbering Jason Johnson's interest is a contract into which Brian Johnson entered December 2006, agreeing to sell the company to his long-time employee, Tony Maher. The stock purchase agreement (SPA) gave Maher the right to purchase 100% of the company's stock in ten-percent increments each year, beginning January 2010. Maher's purchase rights were contingent on him remaining an "employee in good standing." Executed concurrently with the SPA was a deferred compensation agreement in which Datum-A agreed to pay Brian Johnson $1.5 million over the course of ten years starting in January 2010. The deferred compensation agreement was guaranteed by Maher and provided that in the event of Brian Johnson's death the unpaid balance under the agreement would pass to his spouse.

Following Brian Johnson's death, his wife Debra Johnson Wright was informally appointed as the personal representative of his estate. She also stepped in as Datum-A's president. At that time, Maher had already exercised his rights under the SPA by making at least three payments.[1] Maher learned that Johnson Wright was considering selling the company and had contacted a potential buyer. After Maher objected to the sale, Johnson Wright terminated his employment and refused to transfer any additional stock to him under the SPA on the basis that he was no longer an employee in good standing. Maher

---

[1]The parties dispute whether Maher has since tendered additional payments. Maher maintains that he has tendered three additional payments and is therefore currently entitled to 60% of the corporation's shares.

sued Datum-A and Johnson Wright in Hennepin County District Court, arguing that his termination was improper and that the corporation failed to distribute shares owed to him under the SPA. He moved for a temporary injunction, which the district court granted after finding that he was likely to prevail on his claims. Maher was reinstated, and Johnson Wright was enjoined from selling the corporation.

The parties eventually reached a settlement in which the company agreed to pay the estate $100,000 as full payment for any amount owed to Brian Johnson under the deferred compensation agreement, and Maher agreed to pay the estate $21,000 in exchange for all remaining Datum-A stock. The settlement also required the company to pay Johnson Wright $650,000 in satisfaction of the scheduled payments remaining under the deferred compensation agreement. The parties further agreed to release all claims between each other, as well as all potential claims by or against the estate. The settlement was conditioned on the district court's approval.

Jason Johnson filed a petition to have the estate formally probated and to have Johnson Wright removed as personal representative. The Hennepin County District Court sitting in probate determined that Johnson Wright had a conflict of interest because of her roles in the shareholder litigation and as personal representative of the estate. Based on the parties' stipulation, the district court appointed Alan Silver as the estate's personal representative. Silver evaluated the proposed settlement and submitted a petition recommending that it be adopted because it was in the best interests of the estate. Jason Johnson objected, arguing that approval required his consent under Minnesota Statutes section 524.3-1102. The district court issued an order agreeing with Silver's analysis and

4

approved the settlement over Jason Johnson's objection on the ground that Minnesota Statutes section 524.3-813 gives personal representatives the authority to compromise claims against an estate without the consent of all beneficiaries and that the settlement agreement was in the estate's best interest.

Jason Johnson now appeals.

## ISSUE

Does Minnesota Statutes section 524.3-1102 require a court-appointed personal representative to obtain the unanimous consent of all beneficiaries before compromising claims against the estate or may such claims be settled over a beneficiary's objection under Minnesota Statutes section 524.3-813?

## ANALYSIS

Jason Johnson argues that the district court erred by applying Minnesota Statutes section 524.3-813 to approve the settlement over his objection. This statute provides that, "When a claim against the estate has been presented in any manner, the personal representative may, if it appears for the best interest of the estate, compromise the claim, whether due or not due, absolute or contingent, liquidated or unliquidated." Minn. Stat. § 524.3-813. We have interpreted section 524.3-813 to allow the compromise of claims against the estate without the heirs' consent. *In re Estate of Dahle*, 384 N.W.2d 556, 558-59 (Minn. App. 1986). Johnson maintains that the district court should have instead applied section 524.3-1102, which, if applicable, would have barred approval of the settlement without his written consent. *In re Estate of Sullivan*, 724 N.W.2d 532, 535 (Minn. App.

5

2006). The issue of which statute controls is a question of law which we review de novo. *Caldas v. Affordable Granite & Stone, Inc.*, 820 N.W.2d 826, 836 (Minn. 2012).

Minnesota Statutes section 524.3-1102(1) requires that before the court may approve a compromise "[t]he terms of the compromise shall be set forth in an agreement in writing which shall be executed by all competent persons . . . which will or may be affected by the compromise." We have considered this statute on only two prior occasions, and both instances involved will contests and settlements among the beneficiaries themselves. *See Sullivan*, 724 N.W.2d at 534-35; *In re Estate of Schroeder*, 441 N.W.2d 527, 529-30 (Minn. App. 1989), *review denied* (Minn. Aug. 15, 1989). A unanimous consent rule makes sense in the will-contest setting because the beneficiaries are directly altering the distribution under the will. Jason Johnson maintains that section 524.3-1102 is not limited to will contests, and that unanimous beneficiary consent is necessary when a personal representative compromises claims between the estate and third parties. He urges us to construe the statute in light of Minnesota Statutes section 524.3-1101 (2014), which provides:

> A compromise of any controversy as to admission to probate of any instrument offered for formal probate as the will of a decedent, the construction, validity, or effect of any probated will, the rights or interests in the estate of the decedent, of any successor, or the administration of the estate, if approved in a formal proceeding in the court for that purpose, is binding on all the parties thereto including those unborn, unascertained or who could not be located.

At first glance, his argument that this broad language ("A compromise of any controversy as to . . . the rights or interests in the estate of the decedent") expands section

6

524.3-1102 to include situations beyond will contests does not appear entirely unreasonable. But there are serious problems with this interpretation. The first issue is that it would implicitly overturn our decision in *Dahle* that section 524.3-813 grants personal representatives the authority to compromise claims against the estate without the heirs' consent. 384 N.W.2d at 558-59. Although Jason Johnson criticizes our reasoning in that case, he does not present an argument as to why it should not be followed, and we see none. Significantly, his interpretation would substantially limit the ability of personal representatives to effectively administer estates because they would need unanimous beneficiary consent to compromise any claim. If section 524.3-1102 were to apply to the compromise of any claim, a personal representative could be compelled to expend the estate's resources litigating claims that should rightly be settled. We do not adopt a construction that could encourage the depletion of estate assets through wasteful litigation. *See* Minn. Stat. § 524.1-102(a), (b)(3) (2014) (stating that the probate code should be construed to promote its underlying purpose and policies, including the "speedy and efficient" liquidation of the estate).

We are unconvinced by Jason Johnson's next argument that section 524.3-813 cannot apply here because it does not provide the personal representative with the authority to resolve without beneficiary consent counterclaims that the estate has against a claimant. The probate court grants personal representatives broad powers to administer estates. *See* Minn. Stat. §§ 524.3-701–721 (2014). These powers include the authority to "effect a fair and reasonable compromise with any debtor or obligor, or extend, renew or in any manner modify the terms of any obligation owing to the estate." Minn. Stat. § 524.3-715(17).

7

Implicit in the authority to enter compromises with claimants is the power to settle any counterclaims held by the estate, otherwise the personal representative would lack the ability to effectively dispose of controversies in their entirety. Requiring beneficiary consent for the compromise of counterclaims but not for claims against the estate itself would create an inconsistency and unduly hinder the personal representative's ability to effectively administer the estate.

Jason Johnson also argues that section 524.3-813 does not permit the resolution of claims against the estate here because "[t]he district court had no evidence that the parties to the shareholder dispute had actually presented claims against the Estate in a statutorily acceptable manner in a timely fashion." This argument is defeated by the language of the statute and the circumstances present. Section 524.3-813 on its face applies to claims "against the estate [that have] been presented *in any manner*" whether those claims are "due or not due, absolute or contingent, liquidated or unliquidated." Minn. Stat. § 524.3-813 (emphasis added). The statute contemplates the settlement of claims beyond those that have already been directly raised in a lawsuit. Here, the personal representative was concerned about potential claims against the estate arising from the shareholder dispute. These concerns are justified given that Maher had threatened to bring the estate into the lawsuit if the settlement agreement was not approved. Although Jason Johnson suggests that any claims raised by Maher would have been untimely, he points to no legal authority or evidence in the record supporting this allegation.

In sum, we hold that when an estate is administered by a court-appointed personal representative, Minnesota Statutes section 524.3-813 authorizes the personal representative

to compromise third-party claims against the estate without the beneficiaries' unanimous consent. This authority includes the power to compromise the estate's counterclaims as well as any claims against the estate that have not yet been filed. The district court properly applied section 524.3-813.

We next turn to Jason Johnson's alternative argument that even if section 524.3-813 applies, the district court abused its discretion by approving the settlement. We review a district court's approval of a compromise effected by a personal representative for abuse of discretion. *Dahle*, 384 N.W.2d at 559. Jason Johnson asserts that the district court abused its discretion by approving the settlement because it deviates from the decedent's testamentary intent. The argument is unconvincing. Brian Johnson contracted to sell the entire company to Maher. Following Brian Johnson's death, Maher was terminated from his position at the company, prompting the shareholder dispute that the settlement agreement intended to resolve. The dispute did not arise until after Brian Johnson's death. We cannot possibly know what his wishes would have been with regard to the settlement of the shareholder dispute.

Our review of the record convinces us that the personal representative more than adequately considered the possible alternatives to settlement before determining that approval was in the estate's best interest. The personal representative thoroughly analyzed the various positions the estate could have taken with regard to the ongoing shareholder dispute, including the possible methods to unencumber the stock and obtain a higher amount than what was owed under the SPA. He ultimately decided that no alternative course of action justified the expense to the estate in opposing the settlement agreement.

The district court fairly relied on the personal representative's analysis when it granted approval of the settlement.

## D E C I S I O N

The personal representative had the authority under Minnesota Statutes section 524.3-813 to compromise claims against the estate without appellant's consent. Because the district court did not abuse its discretion by approving the settlement, we affirm.

**Affirmed.**